CASE 13—PETITIONS ORDINARY—October 26.

## Commonwealth v. Owensboro, Falls of Rough, &c., R. Co.

Commonwealth v. Louisville & Nashville R. Co., &c.

Commonwealth v. Mammoth Cave R. Co., &c.

Commonwealth v. Elkton & Guthrie R. Co., &c.

Commonwealth v. Burnside, &c., R. Co., &c.

Commonwealth v. Hodgenville, &c., R. Co., &c.

Commonwealth v. Louisville Southern R. Co.

Commonwealth v. Louisville, Hardinsburg & Western R. Co., &c.

Commonwealth v. Ohio Valley R. Co., &c.

Commonwealth v. Louisville, St. Louis & Texas R. Co.

Commonwealth v. Louisville Southern R. Co., &c.

Commonwealth v. Ky. & Ind. Bridge Co.

Commonwealth v. Ky. Midland R. Co.

Commonwealth v. Kensee Coal Co.

Commonwealth v. Owensboro & Nashville R. Co., &c.

APPEALS FROM FRANKLIN CIRCUIT COURT.

1. EXEMPTION OF RAILROADS FROM TAXATION—REPEAL OF STATUTE.—
The act of May 5, 1884, providing for the exemption from taxation, for a period of five years, of all railroads thereafter built in this State, was repealed by the general revenue law of May, 1886, which, after providing for the taxation of "all property," except such as was specifically exempted by its provisions, provided for the repeal of certain acts by their titles, "and all other acts, general and special, and parts of acts inconsistent herewith or not in conformity herewith."

2. SAME.—The fact that the act of May 5, 1884, was, subsequent to the time at which the general revenue law of 1886 went into effect, embodied in an edition of the General Statutes, which was adopted by the Legislature, can not be regarded as a legislative construction that

Commonwealth v. Railroad Companies, &c.

the act of 1884 was not repealed by the general revenue law, as that law with its repealing clause is found later on in the same edition.

3. SAME.—If the language of an act be certain, its object can never be defeated by any amount of contemporaneous interpretation, no matter how consistent or how widely adopted it may have been. It is only where the words of the statute are of doubtful meaning that the courts will resort to contemporaneous interpretation.

4. THE REPEAL OF THE ACT OF 1884 IS INOPERATIVE as to railroads the construction of which was commenced prior to September 14, 1886, the date at which the repealing act took effect, as the Legislature had no power to withdraw the exemption from those who had expended their money upon the assurances of the act.

5. THE ACT OF 1856, RESERVING THE RIGHT TO REPEAL OR AMEND CHARTER PRIVILEGES granted by the Legislature to particular persons, has no application to the law of 1884, which was a general law affecting alike all who accepted its promises or acted on the strength of them.

6. APPELLATE PRACTICE.—The court having overruled a demurrer to the plea of exemption interposed by the defendants, a dismissal of the petitions was bound to follow; and although the State afterward introduced testimony to sustain the allegations of its petitions, and the petitions were dismissed on final hearing, neither a motion for a new trial nor a separation of the conclusions of law and fact was necessary to enable this court to review the questions of law, which were the only questions before the court, there being no contrariety of testimony.

WM. J. HENDRICK, ATTORNEY-GENERAL, AND REID ROGERS FOR APPELLANT.

1. The act of 1884, conferring an exemption from taxation upon newly constructed railroads for five years, was repealed by the revenue law of May 17, 1886.

Express Repeal: Bishop on Written Law, sec. 152; Sutherland on Statutory Construction, p. 199; State v. Kelly, 34 N. J. Law, 77; Commonwealth v. Churchill, 2 Met., 122.

Legislative Intent: Endlich on Interpretation of Statutes, sec. 8. Rule, *Generalia Specialibus*, &c.; Sutherland, sec. 158, also p. 214; Bishop on Written Laws, sec. 152; Endlich, secs. 231, 206, 234, 359.

Effect of Clause Repealing Inconsistent Legislation: State v. Minton, 3 Zab., 531; Bank of Jersey City v. Assessors, 30 N. J. Law, 112; State v. Miller, 30 N. J. Law, 369; Adams v. Ashby, 2 Bibb, 96; Hickman v. Littlepage, 2 Dana, 345; Chatteroi R. Co. v. Skinner, 81 Ky., 222; Treacy v. Elizabethtown, &c., R. Co., 86 Ky., 276; Jarrell v. Commonwealth, 9 Ky. Law Rep., 572.

Contemporaneous Interpretation: Endlich, p. 506; United States v. Graham, 110 U. S., 221; Smythe v. Fiske, 23 Wall., 374; United States v. Moore, 95 U. S., 760; District of Columbia v. Hatton, 143

Commonwealth v. Railroad Companies, &c.

U.'S., 27; Collins v. Henderson, 11 Bush, 92; Railroad Commissioners' Report, 1887, p. 138; Louisville Water Co. v. Clark, 143 U. S., 1.

2. The Legislature had the power to withdraw the exemption, there being no vested right. (Tomlinson v. Jessup, 15 Wall., 454; Hoge v. Railroad Co., 99 U. S., 354; Commonwealth v. Fayette County R. Co., 55 Pa. St., 452; Railway Co. v. Supervisors, 35 Wis., 257; Tucker v. Ferguson, 22 Wall., 574; Church Wardens v. Co. of Phila., 24 How., 302; Salt Co. v. East Saginaw, 13 Wall., 376; Welch v. Cook, 97 U. S., 543; Shiner v. Jacobs, 62 Iowa, 392.)

3. The exemption act of 1884 has not since its repeal been revived or re-enacted. (Gen. Stats., p. 157; Commonwealth v. Pointer, 5 Bush, 303; Session Acts, 1890–91, chap. 518.)

4. Although there was no motion for new trial this court may consider the sufficiency of the pleadings and also whether there was any testimony whatever to support the judgment. (Helm v. Coffey, 80 Ky., 176; Henderson v. Dupree, 82 Ky., 681.)

American Aid Society v. Bronger, 91 Ky., 406, distinguished.

THOMAS H. HINES of counsel on same side.

JOHN W. RODMAN for Louisville & Nashville Railroad Company.

1. In the absence of a separation of conclusions of law and fact and of a motion for new trial this court can consider nothing except the sufficiency of the pleadings to support the judgment. (Artsman v. Thoma, 4 Ky. Law Rep., 430; Boulware v. Griffith, 4 Ky. Law Rep., 724; Goetz, Recr., v. Loretto Literary and Benevolent Ass'n, 4 Ky. Law Rep., 735; Am. Mut. Aid Society.v. Bronger, 91 Ky., 406; Lawson v. Marshall, 12 Ky. Law Rep., 292; Harbor v. Harris' Adm'r, 8 Ky. Law Rep., 965; L. & N. R. Co. v. Mazzoni, 9 Ky. Law Rep., 151; Collins v. Wheeling, 9 Ky. Law Rep., 1013; Seeley v. Potter & Co., 11 Ky. Law Rep., 185; Southern Div. Cumb. & Ohio R. Co. v. Marion County, 11 Ky. Law Rep., 329.)

2. The exemption act of 1884 was not repealed by the revenue law of May 17, 1886.

The act of April 10, 1888, adopting as the law of the land the edition of the General Statutes, published in 1887, by Bullitt & Feland, which embraces the exemption act of 1884, is a legislative construction of the act of 1886 and such a recognition of the act of 1884 as should be conclusive of the case.

The court in interpreting a statute will take judicial notice of contemporaneous history. (Endlich on Int. of Statutes, sec. 29, p. 30; *Idem*, sec. 357, p. 499; *Idem*, sec. 360, p. 505; Lake v. Caddo Parish, 37 La. An., 788.)

The law does not favor repeals by implication. (Endlich on Int. of Statutes, sec. 210, p. 280; *Idem*, sec. 215, p. 287; *Idem*, sec. 223, p.

Commonwealth v. Railroad Companies, &c.

298; DeWinton v. Brecon, 28 L. J. Ch., 600; State v. Township Committee (N. S.) 3 Centr. Rep., 251; Blaine v. Bailey, 25 Ind., 165; Williams v. Pritchard, 4 T. R., 2; Rounds v. Waymart Borough, 81 Pa. St., 305; Elizabethtown & Paducah R. Co. v. Trustees of Elizabethtown, 12 Bush, 236.)

Louisville Water Co. v. Clark, 143 U. S., 1, distinguished.

3. If the act of 1884 was repealed, the companies which had, prior to the repeal, expended money upon the faith of the act had acquired a vested right to the exemption, and as to them the repeal is inoperative. (McGee v. Mohlers, 4 Wall., 143; Pacific R. Co. v. McGreen, 20 Wall., 36; Wilmington R. Co. v. Reid, Sheriff, 13 Wall., 264; Humphrey v. Pogue, 16 Wall., 244; Commonwealth v. Green & Barren River Nav. Co., 78 Ky., 73; University v. People, 99 U. S., 309.)

WM. LINDSAY AND H. W. BRUCE OF COUNSEL FOR LOUISVILLE & NASHVILLE RAILROAD COMPANY.

HELM & BRUCE FOR LOUISVILLE, ST. LOUIS & TEXAS RAILWAY COMPANY.

1. The plaintiff having failed to ask for a separation of the court's conclusions of law and fact, the rulings upon the law must be treated by this court as the law of the case, whether right or wrong.

2. The failure of the Commonwealth to move for a new trial leaves nothing for this court to decide except whether the plaintiff would have been entitled to a peremptory instruction in case the jury had not been dispensed with. (Helm v. Coffey, 80 Ky., 176; Henderson v. Dupree, 82 Ky., 680.)

3. The original exemption was valid.

The question as to whether the Hewitt Bill repealed the act of exemption, as also the question as to whether or not the exemption has been re-enacted, is left to other counsel.

HUMPHREY & DAVIE FOR LEXINGTON BELT RAILROAD COMPANY.

1. The failure to move for a new trial is fatal on appeal. (Helm v. Coffey, 80 Ky., 176.)

2. The failure of the Commonwealth to have a separate finding of the law and facts is also fatal to the appeal. (Am. Mut. Aid Society v. Bronger, 91 Ky., 406.)

3. The act exempting new railroads from taxation is not repealed by the Hewitt Tax Law of 1886.

The contemporaneous construction put upon the Hewitt law as not repealing the exemption of new railroads is controlling on the court's construction of the Hewitt Act. (United States v. Alabama R. Co., 142 U. S., 615; Hastings v. Dakota Railway, 132 U. S., 366; Robertson v. Downing, 127 U. S., 608; Barbour v. City of Louisville, 83 Ky., 95.)

The Hewitt Act being a general law, will be considered as excepting

from its operation those things already specially provided for by special and particular laws. (Supervisor of Walworth county v. Village of Whitewater, 17 Wis., 193; State v. Minton, 23 N. J. Law, 531; Rounds v. Waymart Borough, 81 Pa. St., 395; State v. Brannin, 23 N. J. Law, 485; Commonwealth v. Cain, 14 Bush, 525.)

HOLMES CUMMINS for Ohio Valley Railway Co. and Hodgenville & Elizabethtown Railway Co., &c.

1. The Legislature has no power to repeal the exemption act of 1884, or charter exemptions, large sums of money having been expended by defendants upon the faith of these exemptions.

Acts of incorporation are contracts within the meaning of the Constitution, and laws impairing the obligation of such contracts are unconstitutional when the right to amend is not reserved in the act of incorporation or by general law. (Hamilton v. Keith, 5 Bush, 461; Slack v. M. & L. R. Co., 13 B. Mon., 25; Louisville v. University, 15 B. Mon., 674; Gregory v. Trustees, &c., 2 Met., 597; Green & Barren River Nav., case 79 Ky., 73; Constitution United States, art. 1, sec. 10; Constitution of Ky., art 18, sec. 20.)

The act of 1856 (Gen. Stats., chap. 68, sec. 8) does not reserve the right to withdraw or repeal *immunities,* but expressly stipulates that no amendment or repeal shall impair "other rights" than "franchises and privileges;" and an immunity from taxation is an "other right" than what is termed a franchise or privilege. (Railroad Co. v. Gaines, 97 U. S., 687; Trask v. McGuire, 18 Wall., 381; Morgan v. Louisiana, 93 U. S., 217; The State v. Railroad Co., 12 Lea (Tenn.), 583.) •

2. There was no intention to repeal. A familiar rule of construction presumes that the Legislature knows the construction put by the courts of the country upon the laws of the land, and that the Legislature acts with knowledge of the course of judicial decision. Applying this rule here, we must presume that in 1886, when enacting the Hewitt law, the General Assembly not only had in mind the exemption act of 1884, but also the rule announced by this court in the case of Elizabethtown, &c., R. Co. v. Trustees of Elizabethtown, 12 Bush (decided in 1876). And further, that again in 1888, when adopting the Bullitt & Feland edition of the General Statutes, containing both the act of 1884 and the Hewitt Revenue Law of 1886, the Legislature did not consider the two in conflict or the one as repealing the other, but rather relied on the rule of construction followed by the court in 12 Bush case, as safely preventing any misconstruction.

E. F. TRABUE for E. T., V. & G. Ry. Co. and K. & I. Bridge Co.

1. The Commonwealth totally failed to establish the case made by its petitions, and its petitions should have been dismissed. (Gossum v. Badgett, 6 Bush, 97.)

Commonwealth v. Railroad Companies, &c.

The statute imposed ·on the auditor the duty of obtaining the information concerning the length and value of these railroads, and the auditor had no right to delegate this authority to the Railroad Commission. Under the statute the auditor has his duty and the Railroad Commission has its independent duty, and the failure of either to perform such duty is fatal to the claim of the Commonwealth. (State ex rel Harvey v. Cook, 82 Mo., 185; Northern Pac. R. Co. v. Carland, 3 Pac. Rep., 134; Cooley on Taxation, 260.)

:2. In the absence of a separation of the conclusions of law and fact and of a motion for a new trial this court can not review the lower court's findings of law or fact. (Am. Mut. Aid Soc. v. Bronger, 91 Ky., 406; Helm v. Coffey, 80 Ky., 176; Henderson v. Dupree, 82 Ky., 980.)

:3. The exemption act of 1884 was not repealed by the Hewitt Revenue Law of 1886. (E. & P. R. Co. v. Elizabethtown, 12 Bush, 233.) Louisville Water Co. v. Clark, 143 U. S., 1, distinguished. ·

4. The Legislature had no power to repeal, as the defendants had expended large sums of money upon the faith of the exemption and could not be placed in statu quo. (Commissioners v. Green & Barren River Nav. Co., 79 Ky., 73; McGehee v. Mather, 4 Wall., 143.)

JOHN W. & HARRY G. RODMAN for MAMMOTH CAVE R. Co., &c., AND FOR KENSEE COAL Co.

DULANEY & MITCHELL of counsel for MAMMOTH CAVE R. Co., &c.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The principal questions involved on the foregoing appeals are common to all of them, and for that reason the cases are heard together.

On May 5, 1884, the General Assembly of the State adopted the following act:

. "An act to encourage the building of railroads in the Commonwealth of Kentucky, and to exempt from taxation all railroads which may be hereafter built under existing charters, or under charters which may be hereafter granted for a period of five years from the date of the beginning or the construction of such new roads.

"§ 1. That all railroads which may hereafter be built within this Commonwealth under existing charters, or under charters which may be hereafter granted, shall be

exempt from all taxation under the laws of this Commonwealth for a period of five (5) years from the date of the beginning of the construction of such new roads.

"§ 2. *Be it further enacted,* That this act take effect from and after its passage."

The appellees are railroad companies which began the construction of their respective roads after the adoption of this act; and on the faith of which act they are claiming an exemption from State taxation for five years from the time of such beginning.

The appellant by these suits, instituted in the Franklin Circuit Court, is seeking to collect taxes from the appellees, in spite of the act aforesaid, on the ground that in May, 1886, by an act taking effect September 14, 1886, the Legislature repealed the act relied on by the appellees. This latter act is known as the " Hewitt Revenue Bill." It is entitled "An act to amend the revenue laws of the Commonwealth of Kentucky." It is an elaborate general revenue statute, providing under separate articles (1) the rate of taxation, (2) stocks in banks and other institutions, (3) *railroads,* (4) turnpike roads and other corporations, (5) license tax, (6) the assessor and his duties, (7) board of supervisors, (8) duties of clerks, (9) collection of the revenue, etc., etc.

Section 1 of article 1 provides that an annual tax of forty-seven cents upon each one hundred dollars of value of *all the real and personal estate* directed to be assessed for taxation, due and payable the fiscal year assessed, shall be paid by the owner or persons assessed. By section 3 it is provided that all property, real and personal, within the State *" not herein expressly exempt by law,"* shall be assessed, as nearly as practicable, according to a uniform

rate and in the manner provided in detail by the act. And a succeeding section provides what property shall be exempt from taxation, namely: Property of the United States, property of the Commonwealth, cattle of certain value, etc., etc.

Article 2 provides for the taxation of "stocks in banks and other institutions."

Section 1 of article 3 provides that "the president or chief officer of *each railroad company*, or other corporation owning a railroad, lying in whole or in part in this State, *shall*, on or before the first of September in each year, return to the Auditor of Public Accounts of the State, under oath, the total length of such railroad . . . with the average value per mile thereof;" and by a succeeding section it is provided that the same *rate of taxation* for State purposes, which is or may be in any year levied on other real estate, shall be levied upon the value so reported and found of the railroad, rolling stock and real estate of *each company*.

After providing for the taxation of turnpike roads and other corporations, imposing license taxes and regulating the duties of assessors, boards of supervisors, clerks and sheriffs in relation to the revenue, the act concludes (section 5, article 12) as follows:

"Chapter 92 of the General Statutes, the act of March 28, 1872, entitled 'An act to amend chapter 83 of the Revised Statutes, titled "Revenue and Taxation;" the amendment to said act of March 28, 1872 entitled 'An act to amend an act, approved March 28, 1872, authorizing sheriffs to sell real estate to pay revenue tax,' approved April 19, 1873, the act approved April 2, 1878, title 'An act to amend section 6, article 6, chapter 92, General

Statutes,' 'An act to amend article 2 of chapter 92 of the General Statutes, title "Revenue and Taxation," approved May 8, 1884, and *all other acts, general and special*, and parts of acts *inconsistent* herewith, or *not* in *conformity* herewith, are *repealed;* but nothing in this act shall interfere with any existing local option, or any special or prohibition law in any county, nor with any local or general law for creating or collecting county levy, or with chapter 1315 of the Acts of 1879–80—'Agricultural and Mechanical College Tax'—or with an act entitled 'An act for the benefit of the branch penitentiary at Eddyville,' approved April 7, 1886.

"§ 6. Nothing in this act shall be held to repeal or in any way impair the force and effect of any local or special act, or any general law in force, or that may hereafter be passed, providing for the appointment of collectors of State revenue or county levy and poll tax, in any county of the State, nor shall anything herein be construed to repeal or impair the force of any special or local law giving to counties or towns, for road or street purposes, the fines collected for violations of the road and bridge laws of said county."

In determining the force and effect of this latter act on prior legislation, general or special, regulating taxation in the Commonwealth, it is evident that its general purpose and intent should be given much weight.

Manifestly, the act of 1886 is intended to compass and reform the entire revenue law of the State—to constitute in itself a general and complete revenue system. As argued by counsel, "it singles out no special defects here and there, but is aimed broadcast at the whole structure.

Else why should it have re-enacted, as it does, many old laws in identical and equivalent terms?"

This general purpose, to be made effective and uniform, must sweep away a mass of special and class legislation adopted in pursuance of the system theretofore in practice.

We notice, first, that *all* property, real and personal, shall be assessed for taxation, save that *expressly exempted* in the act itself. Not content with this, the act proceeds to *repeal all acts and parts of acts, general and special, inconsistent with itself or not in conformity to itself.*

Can it be said that the act of 1884, providing by a general law for a tax exemption, for a specified time, of the property of all newly built railroads in the State, the force of which was to continue the exemption forever or indefinitely, is not inconsistent with an act intended to embrace the whole tax law of the State, demanding the equal and uniform taxation of all property within the State, save the property of the United States, the Commonwealth of Kentucky, etc.? And demanding specifically and without exception or exemption, the taxation of all the property of *each* railroad company within the State? We think not.

Manifestly there is the most positive repugnancy between the two acts, and upon abundant authority, if any were needed to sustain so evident a proposition, the latter act supersedes and repeals the former. "An intention to supersede local and special acts (Endlich, sec. 231) may be gathered from the design of the act to regulate by one general system or provision the entire subject matter thereof, and to substitute for a number of detached and

varying enactments one universal and uniform rule applicable throughout the State."

"Ordinarily," says Mr. Bishop in his work on Written Laws, section 152, "if there are a general statute and one local or special on the same subject in conflicting terms, neither abrogates the other, but both stand together, the former furnishing the rule for the particular locality or case, the latter for the unexcepted places and instances. And it is immaterial which is of the later date. But when from anything cognizable by the judges, they are satisfied the general law was meant by the Legislature to supersede the local or special one, they will give it that effect."

Here the repeal is gathered not merely because the acts are inconsistent, but because the latter in express terms repeals all acts and parts of acts, general and special, inconsistent therewith or not in conformity thereto. Sutherland on Stat. Const., page 214, says, that when a general act is passed "and repeals all inconsistent legislation, it will have the effect to repeal all special acts which are in conflict with it." And Endlich, section 206, says, that such a clause removes the chief objection to repeals by implication.

We may notice in this connection that the act of 1884, strictly speaking, is not a local one. Its operation is uniform and general on the class to be affected. As said by counsel, "it was passed for no local purpose, nor with any individual instance in view, but as a general law, of whose benefits corporate persons not yet in being might avail themselves."

It was engrafted into the General Statutes of the State and formed a part of the general revenue law of the

State in existence when the general revenue act of 1886 was adopted. And the latter must be held to repeal the former.

In Louisville Water Co. v. Clark, 143 U. S., 1, the Supreme Court held that the act of 1886 was a general revenue act, and considering the purpose of its enactment and the fact that it required the taxation of *all* property within the State, unless expressly exempted by its provisions, and repealed all inconsistent acts, general or special, it was held to repeal the special act of that company exempting it from taxation. Much stronger we think is the argument that repeals the *quasi* general act exempting newly built railroads.

On the other hand it is contended that as there is no reference to the act of 1884 in the alleged repealing act, its repeal would be one by implication, which is not favored. We have seen, however, that considering the general purpose of the act of 1886 and its express repeal of inconsistent acts, the Legislature must have intended the latter act to constitute in itself a complete system of taxation.

It is urged that there has been a legislative construction of this act of 1884 conclusive of the question.

In 1887 Messrs. Bullitt and Feland collated and published the acts of the Kentucky Legislature regarded as in force and effect; and in 1888, the General Assembly, by an act of April of that year, *adopted* the edition of the General Statutes as thus prepared, from chapter 1 to 113a, inclusive. The act of 1884 relied on by the appellees as exempting them from taxation is found embodied in the edition of the statute named. So, however, is found later on in the same edition the act of 1886, repealing, as ap-

pellant contends, the former act. We are left, therefore,. where we started—with the solution of the question depending at last on the terms and provisions of the acts themselves and the circumstances and purposes of their enactment.

It is insisted that there has been a contemporaneous interpretation of these statutes by the officers whose duties were to enforce them, favorable to the contention that the one was not intended to repeal the other.

Thus, the Auditor, after 1886, continued to report these roads as "non-taxable roads."

The Railroad Commissioners, in some of their reports,. incorporate the act of 1884 as if in full force and effect, and make report of the length and valuation of the roads. merely for statistical purposes. The Governor, in his message of December 30, 1889, says: "Taxes were paid,. however, on only $34,174,272 valuation of property, as. the residue, amounting to $10,516,631, is at present exempt from taxation by the terms of their charters."

"So," say counsel for the appellees, "we have this act construed by the Legislature, the Governor, the Railroad Commissioners and the Auditor, and without the Commissioners and the Auditor it was impossible to execute the law."

It may be admitted that the interpretation given the statute by these officers might be persuasive evidence of its meaning if the repealing act were uncertain, doubtful or ambiguous. In United States v. Graham, 110 U. S., 221, it is said of a law considered unambiguous: "Such being the case, it matters not what the practice of the department may have been, or how long continued, for it can only be resorted to in aid of interpretation, and it

is not allowable to interpret what has no need of inter-
pretation. If there were ambiguity or doubt, then such
a practice begun so early and continued so long, would
be in the highest degree persuasive, if not absolutely con-
trolling in its effects."

So this court, in Collins v. Henderson, 11 Bush, 92,
says: " Where the words of an act are obscure or doubt-
ful, and where the sense of the Legislature can not with
certainty be collected by interpreting the language of the
statute according to reason and grammatical correctness,
considerable stress is laid upon the light in which it was
received and held by contemporary members of the pro-
fession."

If the language of an act be certain, its object can never
be frustrated by any amount of contemporaneous inter-
pretation, no matter how consistent or how widely
adopted it may have been. A construction against the
plain meaning of the law as expressed by its terms, even
in aid of justice or right, or to avoid an absurdity, is never
permissible. (Endlich, p. 506.)

Considering, therefore, the question of repeal disposed
of, the inquiry remains, what effect does the repeal of the
act of 1884 have upon the rights of the appellees, some
of whom began the construction of their roads prior to
the repeal and some of them subsequently thereto?

It results, of course, without further argument, that the
property is subject to taxation of such of the appellees as
commenced the construction of their roads after the repeal
of the act on which they rely for exemption. Without
this exemption act of 1884, their property is upon the
same footing as other property in the State. They can
not say, after September, 1886, we relied on this exemption

act, expended our money in the construction of these roads on the strength of the act of 1884, and therefore have acquired certain rights which the Legislature can not take away! The exemption had been withdrawn before they began the work or expended their money. Certainly the State takes away none of their property, and circumscribes none of their property rights. It simply treats their property as it does that of others, because subject to the same general law of taxation. The State, however, contends that the same is true of the property of those of the appellees who began the construction of their roads while the law of 1884 was in force, that is, at a time prior to September 14, 1886.

It is contended that the exemption act is a mere bounty which the State may withdraw at pleasure; and more than that, that even if the act to encourage the appellees to construct their roads be regarded as forming a contract with the State of an obligatory character, yet the power reserved to the State by the law of 1856 authorized any change in the contract desirable by the State, or even its entire revocation. Quoting from Tomlinson v. Jessup, 15 Wallace, 454, a leading case on the subject under consideration, counsel contend that "immunity from taxation, constituting in these cases a part of the contract with the Government, is, by the reservation of the power such as is contained in the law of 1841 (here 1856), subject to be revoked, equally with any other provision of the charter, whenever the Legislature may deem it expedient for the public interest that the revocation shall be made."

It is sufficient to say of this proposition, which even at first blush strikes one as extraordinary and unjust, if attempted to be applied to those of the appellees who

accepted the offer of the State, and expended their money on its exemption pledge, that the act of 1856, reserving the right to repeal or amend *charter privileges* granted by the Legislature to particular persons, has no application to the law of 1884, which, as said before, was a general law, and affected alike all who accepted its provisions or acted on the strength of them.   No contract was made with any person, natural or artificial, upon the adoption of this act; though by accepting its terms certain rights might be secured under the nature of contract rights. But no reservation, express or implied, can be said to have been made therein by virtue of the act of 1856.   Being a general law it was revocable at pleasure; but it does not follow that it might be revoked so as to injuriously affect the citizen accepting its provisions, in violation of the pledge of the State and the common principles of justice. . The State, to promote the ends of development, to afford greater facilities for transportation, and to bring into its borders an increased volume of property, shortly to help bear the common tax-burden, says to the railroad people, build up your enterprises and expend your capital in our midst, and in consideration of the premises we will grant you a brief respite from the tax-gatherer!   We think the State can not withdraw its pledge of immunity from those who acted upon the assurances of this act, and that the property of the appellees beginning their work prior to the repealing act of September 14, 1866, and thus accepting the provisions of the act of 1884 while it was in force, can not be subjected to the taxation sought to be imposed in these actions.   The private exemption acts pleaded by some of the appellees come clearly within the principle decided in Louisville Water Company v. Clark, *supra*.

The immunity claimed was withdrawn by the act of 1886. A question of practice only remains for settlement.

The plaintiff alleged the facts with reference to each road constituting its cause of action, thus, that annual reports of the railroad authorities to the Auditor, of the length and valuation of their respective roads within the State, had been made; that these were annually, and before September 1, laid before the Railroad Commissioners, who proceeded to value and assess the property set forth in these reports; that a statement of such was thereupon returned to the Auditor, who notified the defendants of the amount of the assessment, and the tax due, etc.

The defendants denied these allegations in detail, explaining, as to the reports of their officers when made, that they were furnished for statistical purposes merely. In a separate paragraph the act of May, 1884, was pleaded as affording them immunity from the taxation sought to be imposed. A demurrer to this paragraph was overruled. This defense constituted a complete bar to recovery, and no matter what proof might be adduced by the State in support of the issues otherwise made by the answers, the end necessarily resulting from the ruling of the court in sustaining this plea of exemption was bound to be a dismissal of the petition.

The State, looking perhaps to the contemplated appeal, and with a view of having all the controverted facts established by proof, and having the cases ready for a final judgment should the legal question be determined in its favor in the appellate court, introduced the secretary of the State Railroad Commission and the Auditor's clerk, who proved facts conducing to establish the allegations in the petitions. The defendants introduced no witness, but

Commonwealth v. Railroad Companies, &c.

had their witnesses to file certain additional reports as records. The court on final hearing dismissed the petitions, and the State appealed without having made a motion either for a new trial or for a separation of the law and facts. We do not think either was necessary. The petition seems to have presented a good cause of action. When the plea of exemption was erroneously sustained it really ended the case, or at least put an end to the possibility of recovery by the plaintiff. The facts shown in proof appear to sustain the State's right to recover. There was no contrariety of testimony—a few pamphlets and reports of officers only were filed; and when the case was finally dismissed, there was in fact nothing before the court save questions of law. There was no disagreement as to what was shown in the books, though the legal effect of the facts so shown was a subject of difference of opinion. The court passed on nothing save legal questions, and these this court may review in the absence of the motions for a new trial and a separation of the law and facts. Upon a return of the cases, or such of them as will be indicated, the demurrer to the plea of exemption will be sustained, and then the facts of the alleged assessments, notices, etc, may be fully inquired into.

From the records before us the following appellees appear to have commenced the construction of their roads after September 14, 1886:

Owensboro, Falls of Rough & Green River Railroad Company.

Louisville & Nashville Railroad Company, etc. (being the Cumberland Valley Branch and Extension; the Middle Division, Cumberland & Ohio, known as the Springfield

Branch, and the Clarksville & Princeton Division. The last-named division seems exempt for five years after its commencement on October 31, 1884).

The Burnside & Cumberland River Railroad Company.

Hodgenville & Elizabethtown Railroad Company.

Louisville, Hardinsburg & Western Railroad Company, etc.

Louisville, St. Louis & Texas Railway Company (No. 178), and Kentucky Midland. And the judgments therein are therefore *reversed.*

The following appellees commenced the construction of their roads while the act was in force, and are therefore entitled to the five years' exemption from the date of said commencement, but from the record it appears the exemption expired, and the State appears entitled to recover for a part of the time. The petitions were dismissed and the judgments are *reversed* for that reason :

Ohio Valley Railroad Company.

Louisville Southern Railroad Company, etc. (No. 180).

Kentucky & Indiana Bridge Company.

Kensee Coal Company.

The following appellees commenced their roads while the act was in force, and are not sued for any year for which they are not exempt, and for that reason the judgments are affirmed as to them :

Elkton & Guthrie Railroad Company.

Mammoth Cave Railroad Company.

Louisville Southern, etc. (No. 175), and Owensboro & Nashville, and Louisville & Nashville (No. 184).

The judgments in the cases indicated as erroneous are reversed, with instructions to proceed as herein indicated.