*841 Opinion of the Court by
Chief Justice Hobson—
Affirming.-
By an act approved December 22, 1798, a number of institutions of learning were incorporated, among them Stanford Academy, and 6,000 acres of tbe vacant lands of the State were donated to it. With the proceeds arising from the sale of the land a lot was purchased in Stanford and a building erected thereon which was used for a school for both sexes until about the year 1870, the institution being designated in the acts sometimes as the Stanford Male and Female Academy and sometimes) the Stanford Male and Female Seminary. About the year 1870, the Stanford Female College was incorporated and the trustees of Stanford Academy were given power to apply any part of the funds under their control, not exceeding $4,000, for the purpose of erecting a female seminary building at Stanford. They appropriated $4,000 out of their funds. The trustees of the town of Stanford, under authority conferred upon them, made -similar appropriation for the establishment of the Stanford Female College, and numerous private subscriptions were made. Property was bought, and buildings were erected, and the property was used as a female school from that time, until the year 1904, when the institution not being self-sustaining, the trustees conveyed the property to the Stanford Academy. The conditions of the grant are thus set out in a resolution of the trustees which is copied in the deed:
“Whereas, this institution has a lien debt on its real property that it is not able to pay, and is not now self-sustaining, and it being- the sense of this board that it .would be for the best interest of this institution and of the community in which it is- located to sell the- real and personal property of the Stanford Female College to the Stanford Male and Female Academy, therefore be it
Besolved, That all of the property of the Stanford Female College be offered to the Stanford. Male and Female Academy in consideration of its assuming its indebtedness of $3,090, on condition that the trustees of the last named institution perpetually conduct therein a school for the education of male and female scholars, as provided in its charter; that it carry out all of the terms of the contract between the City of Stanford -and the Stanford Female College; that the number of *842 its trustees be made 11; and with the further proviso and condition that if this proposition isi accepted and a sale made to the Stanford Male and Female Academy, and the same should ever be held invalid, then all of the property so sold hereunder is to revert to the Stanford Female College, and all the money that may be paid by the Stanford Male and Female Academy is to revert to it.”
After this1 deed was made the Stanford Academy took charge of the property and ran it as a girls’ school in connection with the male school conducted by it. In the year 1907 the name of the Stanford Academy wasi changed to Stanford College, but after the establishment of a graded school in Stanford, the trustees found themselves unable to maintain the female school, the State'in the meantime having also provided for the establishment of county high schools:. So the trustees of the Stanford Academy, now known as Stanford College, being unable to comply with the conditions of the grant proposed to surrender the property as therein provided. Thereupon this litigation ensued. The Stanford Graded School insisted that it was entitled to the property. The County, Board of Education set up claim to it; and some of the subscribers to the fund with which the school was established set up claim to it. The case was heard before the circuit court, and he adjudged the property to the County Board of Education to be used for a county high school. From this judgment the other claimant© appeal.
Section 323 Ky. St. among other things provides:
“If any society holding lands shall dissolve, the title to such land and appurtenances shall vest in the trustees of the county seminary in which the land may lie, for the use of such seminary; and if there be no such seminary, then in the county court for the benefit of common schools in the county. ’ ’
Section 4484 also providesi:
“The title to all common school and all county seminary property, the county court and the board of trustees of said seminary consenting, in the limits of any graded common school district organized under the provisions of this law, shall be and the same is hereby, vested in the board of trustees of said graded common school district, and they are hereby empowered to sell and convey the same, or to use the same for graded common school purposes, as to them shall seem best; *843 but when county seminary property shall be appropriated, .all pupils of the county shall be permitted to attend such school at such reduced tuition from! what is ordinary as shall be equitable and made good to them their interest in said seminary property. It is further provided that Avhen any graded school district shall embrace any school property owned or held in trust by trustees, said trustees by a majority of their board, are hereby authorized and empowered to convey their school property to the trustees of the graded school at such price and on such conditions as may be agreed upon by the trustees of both parties.”
We had these statutes before us in Estill Co. v. Board of Trustees of Estill Collegiate Ins., 124 S. W. 412, and construing them there said:
“If a graded common school district has been organized in Irvine, Kentucky, and the county court and the board of trustees^ of the seminary consent, any fund •coming to the trustees from the sale of the property may be turned over to the graded common school district ; but, if no such consent is made, then the fund will pass under section 323, and vest in the county court for the benefit of the common schools in the county, if it appears that the seminary contemplated by the acts of the Legislature cannot be maintained by the trustees, and a condition exists bringing the case within the operation of section 323.”
It will be observed that section 4484 Ky. St. is only •operative where the county court and the board of trus tees of the seminary consent. It i$ insisted here that it being averred that they had no good reason not to consent, the section should be held applicable. Bht we •do not so construe the statute. The purpose of the statute is to vest the discretion in +b& county authorities? and the trustees. If they see proper they can turn •over the.property to the local district, but if they do not see proper to turn it over to the local district, section 323 applies, and it belongs to the schools' of the' whole county. In the case at bar reading the record aa a whole, it is evident that the county authorities refused to consent for the reason that they wished, to use the property for the county high school. We cannot control their judgment on this question.- They- have the right to devote thé property to county purposes if in their judgment this is for the best interest of the cause ■of education in the county. We do not, therefore, see! *844 that the court erred in not adjudging the porperty to the Stanford Graded School.
Stanford College has no ground to complain of the judgment adjudging the property to the County Board of Education for a county high school. It professes itself unable to maintain a school or to comply with the conditions of the grant to it. It is insisted, however, that the original contributors to the fund have a right to demand that the property be sold and the proceeds divided among them. To sustain this view we are referred to the case of Taylor v. Rogers, 130 Ky. 112; but that was entirely a different case from the one here. It was peculiarly a private enterprise. The property was deeded for a (Special purpose, and when the purposes of the grant failed, the title reverted. This was not a purely private enterprise. It was a public enterprise in which the State and' town of Stanford, under special authority, were large contributors. __ No reverter is anywhere shown' in the record. Under section 323 Ky. St., the property belonging to the charity goes as therein directed, but if the charity has failed, and upon the failure of the charity the property reverts, then there is nothing upon which section 323 may act; for it was only intended to operate on the property of the society.' Property which hasi reverted is no longer the property? of the society and is not affected by the section. There is nothing in the record to show that the property in contest had reverted. On the contrary, it appears from the record that it is still the property of the society, and that the society is dissolved and is wholly powerless to carry out the purposes of its incorporation.
Judgment affirmed.