# Trustees of Baptist Female College of Liberty Association, et al. v. Barren County Board of Education, et al.

(Decided February 22, 1921).

## Appeal from Barren Circuit Court.

1.  Trusts—Termination—Disposition of Property.—By an act of the General Assembly, a corporation, designated by the name of "Trustees of the Baptist Female College of Liberty Association," was created with power in the trustees "to purchase or receive by donation, devise, or bequest, any lands, tenements, hereditaments, rents, goods and chattels, and to hold the same by the name aforesaid, to them and their successors forever, for the use and benefit of said institution, and according to the intention of the

donor or donors." After the creation of the corporation certain donations were received for the purpose of purchasing land, erecting buildings thereon and building a school. While these donations came principally from Baptists, many of them were received from members of other churches. The school failed and it became necessary to sell the property to pay its debts: Held, that the surplus proceeds, after paying the debts of the institution, did not belong to the liberty association or any of its churches.

2. Statutes—Construction—When Resort May be Had to Statutes from Which Present Statute Was Derived.—In construing a statute whose language is plain and unambiguous, the courts will inquire no further, but if the matter is left in doubt and uncertainty, resort may be had to the original acts from which the statute was derived.

3. Statutes—Colleges and Universities—Religious Societies—Construction of Section 323, Kentucky Satutes.—Section 323, Kentucky Satutes, providing that "if any society holding land shall dissolve, title thereto, with its appurtenances, shall vest in the trustees of the county seminary, or in the county court for the benefit of the common schools," construed in the light of its language and the prior statutes from which it was derived and held to apply only to religious societies, and not to a corporation holding land solely for the benefit of an educational institution.

4. Trusts—Termination—Dissolution of Seminary—Disposition of Property.—Where donations of property are made to trustees to be held by them for the use and benefit of an educational institution, and according to the intention of the donors, and the trust fails, the surplus proceeds, after discharging the debts of the institution, revert to the original donors or their heirs.

E. H. SMITH, S. E. JONES and C. H. HATCHETT for appellants.

BASIL RICHARDSON and W. L. PORTER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

By an act of the General Assembly, approved March 10, 1873, Henry Shoudy and fifteen others were constituted a body politic and corporate, to be known and designated by the name and style of the Trustees of the Baptist Female College of Liberty Association, with all the powers, privileges and rights which are exercised by the trustees of any academy of learning in this state. Chapter 344, Acts 1873, adjourned session, page 436. A majority of two-thirds of the trustees remaining in office were authorized to fill vacancies until the regular annual meeting of the liberty association, which was given the power to fill such vacancies by a majority vote. The liberty association was also authorized at each annual session to elect one-fourth of the trustees. In addi-

tion to the power to elect officers and teachers, fix their salaries and prescribe rules for the government of the institution, certain powers were conferred on the trustees by section 2 of the act, which is as follows:

"That it shall and may be lawful for the said trustees, and their successors in office, and they are hereby invested with full power and authority in their corporate capacity, to purchase or receive by donation, devise, or bequest, any lands, tenements, hereditaments, rents, goods, and chattels, and to hold the same by the name aforesaid, to them and their successors forever, for the use and benefit of said institution, and according to the intention of the donor or donors of any such lands, tenements, hereditaments, moneys, rents, goods and chattels, and not otherwise, and to sell, transfer, and convey the same, by a majority of said trustees, unless prohibited by the terms of any such donation."

After the creation of the corporation, certain donations were received for the purpose of purchasing land, erecting buildings thereon and conducting the school. While these donations came principally from Baptists, many of them were received from members of other churches. The school became indebted from time to time and it was necessary to mortgage the property in order to meet this indebtedness. The school was conducted with varying degrees of success until the year 1912, when the trustees reported to the liberty association that the school was heavily in debt, and that there was no way of paying the debts except to sell the property. Thereupon, the liberty association passed a resolution empowering the board of trustees to sell the college and grounds for the best price obtainable. The trustees then sold the property to the Barren County Board of Education for the sum of $19,400.00, or more than enough to discharge the outstanding indebtedness.

This suit was brought for the purpose of having the court determine who was entitled to the surplus proceeds. The claimants were the donors, the county court for the use and benefit of the county schools of Barren county, and the liberty association. The chancellor held that the surplus belonged to the common schools of the county. To reverse that judgment, this appeal is prosecuted.

There is no ground whatever for holding that the proceeds of the sale, after discharging the school's indebt-

edness, belong to the liberty association or any of the churches composing that association. While it is true that the school was a Baptist institution and was supported principally by Baptists, and the liberty association had the power to elect the trustees, there is nothing in the act, or conditions accompanying the donations which the trustees were authorized to receive, to indicate that they were for the benefit of liberty association or any of its churches. On the contrary, section 2 above quoted, makes it clear that all donations, devises or bequests, which the trustees were authorized to receive, were to be held by them "for the use and benefit of said institution, and according to the intention of the donor, or donors, of any such lands, tenements, hereditaments, moneys, rents, goods and chattels, and not otherwise."

The next question for decision is whether the judgment awarding the surplus proceeds to the county court for the benefit of the common schools was proper. The judgment was based on section 323, Kentucky Statutes, which is as follows:

"If any society holding land shall dissolve, the title to such land and appurtenances shall vest in the trustees of the county seminary in which the land may lie, for the use of such seminary; and if there be no such seminary, then in the county court, for the benefit of common schools in the county. The provisions of this chapter shall not apply to the society called Shakers, who shall have the same right to acquire and hold real estate as they have had prior to the passage of this law."

The statute of 43rd Elizabeth in reference to charitable uses was in force in Kentucky.

In the year 1814, the General Assembly passed an act for the benefit of religious societies in this commonwealth. 5 Litt. 131; Digest Statute Laws Kentucky of Morehead & Brown, 1834, Vol. 2, p. 1347. Said act is as follows:

"Be it enacted by the General Assembly of the Commonwealth of Kentucky: That if any society or sect of Christians in any part of this Commonwealth, shall heretofore have associated, or hereafter shall associate themselves together, in congregational form, and shall have acquired, or hereafter shall acquire, a piece or lot of ground, for the purpose of erecting thereon a house or houses of worship, graveyard, and pound for horses; and shall have heretofore received, or shall hereafter

receive, the title of said ground, by devise, or conveyance to trustees for the use and benefit of said society or congregation, and it shall become necessary, by reason of the death or removal of said trustees, or through any other cause, to appoint new trustees to support the legal estate, it shall and may be lawful for said society or congregation, by the election held by its members, or by those appointed for that purpose, according to the rules of said society, to elect or appoint, as often as may be necessary, any number of trustees not exceeding five; and to produce the names of said trustees so elected or appointed, to the county court of the county where the house of worship may be situated; who shall order the said names to be entered on their records; and thereupon, said trustees, so elected or appointed, shall be vested with the legal title of said land, for the use and benefit of said congregation; and shall have power to do any legal act in conducting the same which may be necessary for the uses aforesaid; and to maintain any action or actions of trespass, or other action for the safe keeping and preservation of said property, which may be necessary for that purpose:

"Provided, however, that if any schism or division shall take place in said congregation or church, from any other cause than the immorality of its members, nothing in this act shall be so construed as to authorize said trustees to prevent either of the parties so divided, from using the house or houses of worship, for the purposes of devotion, a part of the time, proportioned to the numbers of each party:

"Provided, that the quantity of real estate hereafter acquired by any religious society, and vested in trustees and their successors under this act, shall not exceed (four acres of land): Provided, that nothing in this act shall be construed to authorize the minority of any church having seceded from, or been expelled, or excommunicated from the church or congregation, from interfering in any manner, in their appointments for preaching or worship, with any appointment for similar purposes, which may have been made by the body or the major part of such church or congregation."

In the year 1824, the legislature passed an act to amend an act entitled "An Act for the benefit of religious societies in this Commonwealth," approved February 1, 1814. This act was approved January 7, 1824, and

may be found on page 1348, Morehead & Brown, *supra*. This act is as follows:

"Sec. 1. Be it enacted by the General Assembly of the Commonwealth of Kentucky: That any religious society heretofore formed, or which may hereafter be formed, may acquire by purchase or donation any number of acres of ground not exceeding ten, in one or more lot or lots, under the same rules, regulations and restrictions contained in the above recited act, and for the purposes therein mentioned; and so much of the above recited act as restricts any religious society from holding more than one lot of ground, be and the same is hereby repealed; Provided, however, that this act shall not be construed to authorize any society to hold more than ten acres.

"Sec. 2. Be it further enacted: That if any society so holding lands shall dissolve, the said land and appurtenances shall be vested in the trustees of the seminary of learning of the county where such land may be, for the use and benefit of said seminary; and if there be no seminary in said county, then and in that case the land and appurtenances shall be vested in the county court, for the use of common schools in said county."

The statute of 43rd Elizabeth and the foregoing acts were subsequently revised and embraced in one chapter by the commissioners appointed for that purpose, and constitute chapter 14, Revised Statutes of Kentucky, 1852, by Wickliffe, Turner and Nicholas, which chapter is as follows:

"Sec. 1. All grants, conveyances, devises, gifts, appointments, and assignments, heretofore made, or which shall be hereafter made, in due form of law, of any lands, tenements, rents, annuities, profits, hereditaments, goods, chattels, moneys, stocks, or choses in action, for the relief or benefit of aged or impotent and poor people, sick and maimed soldiers and mariners, schools of learning, seminaries, colleges, universities, navigation, bridges, ports, havens, causeways, public highways, churches, houses of correction, hospitals, asylums, idiots, lunatics, deaf and dumb persons, the blind, or in aid of young tradesmen, orphans, or for the redemption of prisoners or captives, setting out of soldiers, or for any other charitable or humane purpose, shall be valid, except as hereinafter restricted.

"Sec. 2.   No charity shall be defeated for the want of a trustee or other person in whom the title may vest; but courts of equity may uphold the same by appointing trustees if there be none, or by taking control of the fund or property, and directing its management, and settling who is the beneficiary thereof.

"Sec. 3.   No church or society of Christians shall be capable of taking or holding the title, legal or equitable, to exceeding fifty acres of ground; but may acquire and hold that quantity for the purpose of erecting thereon houses of public worship, public instruction, a parsonage, a graveyard and a horse pound.

"1.   The society may, before or after the creation of the charity, appoint not exceeding three trustees, who and their successors, shall be vested with the title, legal or equitable, to such property, for the use of such society.

"2.   The society shall enter such appointment on its record book, a majority concurring therein, and may fill vacancies in like manner.

"3.   The trustees, or a majority of them, may, in their own names, for the use of the society, institute and prosecute suits to recover any property, real or personal, to which society has right, and may defend any suit that shall be instituted against the trustees, or society, for or touching its temporalities.

"4.   In case a schism or division shall take place in a society, the trustees shall permit each party to use the church and appurtenances for divine worship a part of the time, proportioned to the members of each party.

"5.   The excommunication of one party by the other, shall not impair such right, except it be done, *bona fide*, on the grounds of immorality.

"Sec. 4.   If any society holding lands shall dissolve, the title to such land and appurtenances shall vest in the trustees of the county seminary in which the land may lie, for the use of such seminary; and if there be no such seminary, then in the county court, for the benefit of common schools in the county.   The provisions of this section shall not apply to the society called Shakers, who shall have the same right to acquire and hold real estate, as they have had prior to the passage of this act."

The present statute was enacted May 12, 1893, and embraces sections 317 to 324, inclusive, Kentucky Stats. Section 317 is the same as section 1, Revised Statutes of 1852, with the exception that the words, "if the grant,

conveyance, devise, gift, appointment or assignment shall point with reasonable certainty the purposes of the charity and the beneficiaries thereof,'' are inserted between the word ''valid,'' and the words ''except as hereinafter restricted.'' Section 318 is the same as section 2 of the revision. Section 319 is the same as section 3 of the revision. Section 320 is the same as subsections 1 and 2, scetion 3, of the revision. Section 321 is the same as subsection 3, section 3, of the revision. Section 322 is the same as subsections 4 and 5, section 3, of the revision. Section 323 is the same as section 4, of the revision. There is nothing in the revision corresponding to section 324, which merely confers on the circuit court of the county in which the real estate is held the power to adjudge a sale thereof for the purpose of reinvestment in similar property.

Manifestly, if the corporation, ''Trustees of the Baptist Female College of Liberty Association,'' is not a society within the meaning of section 323, *supra*, then its real estate, upon the dissolution of the corporation, would not vest in the county court for the benefit of the common schools. That being true, the case turns on the proper meaning of the word, ''society.'' Of course, if its meaning in the present statute, which is a substantial re-enactment of the revision of 1852, is plain and unambiguous, our inquiry should stop there, but if the matter is left in doubt and uncertainty, we may properly resort to the original acts from which the present statute was derived. United States v. Bowen, 100 U. S. 508, 25 L. Ed. 631; Doyle v. Wisconsin, 94 U. S. 50, 24 L. Ed. 64. Looking at the present act we find that section 319 (section 3 of the revision) provides that ''no church or society of Christians shall be capable of taking or holding the title, legal or equitable, exceeding fifty acres of ground, etc.'' That section, of course, is limited to a society of Christians. Following this section we find other sections relating to schisms and excommunications which could only occur in churches or religious societies. Then follows section 323, providing that ''if any society holding land shall dissolve, the title to such land or appurtenances shall vest, etc.'' In view of these provisions, it would seem that section 323 was limited to religious societies. However, if the matter be regarded as doubtful, the original acts, from which the present statute was derived, show very plainly what was the purpose of the

legislature. The act of 1814, which was "for the benefit of religious societies in this Commonwealth," gave to any such society the right to acquire not exceeding four acres of land for the purpose of erecting thereon houses of worship, grave yards and pounds for horses, and contained other provisions in regard to schisms, etc. The act of 1814 was amended by the act of 1824. Section 1 of the latter act provided in substance that any religious society might acquire not exceeding ten acres. Then followed section 2, providing "if any society so holding land shall dissolve, the said land and appurtenances shall be vested, etc." Manifestly, the word "society," in section 2, referred only to the societies mentioned in section 1, that is, religious societies. Section 323, Kentucky Stats., was derived from, and is the same as, section 2, act of 1824, with the exception of the provisions in regard to Shakers. These circumstances confirm our conclusion that the word "society" in section 323 is limited to religious societies. Here, the real estate was not owned by the liberty association or any of the churches composing that association. The title was in the trustees of the Baptist Female College of Liberty Association, and was held by the trustees for the benefit of the institution, and not for the benefit of any religious society. Not being a religious society, the real estate belonging to the corporation did not, upon its dissolution, vest in the common schools. On the contrary, the case is one where the donations were made to the trustees to be held by them for the use and benefit of the institution and according to the intentions of the donors, and the trust having failed, the surplus proceeds, after paying the debts of the institution, reverted to the original donors or their heirs, in accordance with the rule laid down in Taylor v. Rogers, 130 Ky. 112, 112 S. W. 1105.

The case of Stanford College v. Board of Education, 145 Ky. 838, 141 S. W. 386, in so far as it announces a contrary doctrine, is hereby overruled.

Wherefore the judgment is reversed and cause remanded for proceedings not inconsistent with this opinion.

Whole court sitting.