CASE 10—PETITION ORDINARY—DECEMBER 19.

# Ward v. Beale &c.

APPEAL FROM HARRISON CIRCUIT COURT.

1. THE COUNTY COURT IS AUTHORIZED TO CORRECT AN ASSESSMENT, as provided by section 3 of article 8, chapter 92, General Statutes, only where the assessment was made after the meeting of the county board of supervisors.

2. THE EQUALIZATION OF ASSESSMENTS BY THE STATE BOARD OF EQUALIZATION IS FINAL, and after an assessment has been increased pursuant to its action it can not be reduced by the county court.

3. GENERAL STATUTES—VARIANCE FROM ENROLLED BILL.—Where an act of the Legislature, as embodied in the General Statutes, differs from the enrolled bill, the General Statutes, having been adopted by the Legislature since the enrolling of the bill, must control.

A. H. WARD, J. I. BLANTON FOR APPELLANT.

Brief not in record.

O'HARA & BRYAN FOR APPELLEES.

1. The act of the Legislature creating the State Board of Equalization is not unconstitutional.   (Spalding v. Hill, 9 Ky. Law Rep., 852; Russell, Sheriff, v. Carlisle & Litsey, 10 Ky. Law Rep., 25.)

2. Section 3 of article 8, chapter 92, General Statutes, applies solely to taxes assessed after the meeting of the county board of supervisors, and not to persons who became dissatisfied after such meeting with the assessment of their property. (Gen. Stats., chap. 92, art. 6, sec. 4; *Idem,* art. 7, secs. 6, 7; *Idem,* secs. 9, 14, 22.)

    In the case at bar there was no assessment of any property of appellant after the meeting of the board of supervisors. The action of the State Board of Equalization was not an assessment.

3. The present chapter 92 of the General Statutes must be construed to be the whole law upon the subject of revenue and taxation. (Broadus' Heirs v. Broadus' Devisees, 10 Bush, 299.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant gave the list of his property and its value to the assessor of the county in which the same was situated. The value of the property given in by the appellant and accepted by the assessor, including realty, personalty, &c., amounted to forty-six thousand seven hundred and forty dollars. Thereafter the county board of supervisors for said county, of their own motion, reduced the assessment that the appellant had placed upon his real estate by the sum of five thousand dollars. Thereafter the State Board of Equalization increased the assessment on real estate, including town lots, in said county, fifteen per cent., and of personal property, excluding money or evidences of debt, forty-one per cent., which sums were, in common with other like property of the county, added to the taxable value of the appellant's property as fixed by the board of supervisors. Thereafter the appellant applied to the county court for a reduction of the assessment on his land, complaining of the increase by the Board of Equalization, and the county court did reduce said assessment by the sum of five thousand dollars. But the sheriff of the county,

disregarding the action of the county court, collected the revenue on the assessment as increased by said board, and seized and sold the appellant's mule to satisfy the same, for which the appellant sued the sheriff for trespass, and the lower court having dismissed his petition, he has appealed.

The appellant's claim of authority to thus proceed is based upon section 3, article 8, chapter 92, of the General Statutes, its punctuation being corrected so as to correspond with that of the enrolled bill. Said section, as punctuated, is as follows: "A person claiming to be improperly charged with any tax assessed after the meeting of the board of supervisors may, at any time not later than the next regular county court after he has received notice of the same by demand being made upon him to pay the tax, offer evidence in support of said complaint to the county court of the county," &c., and if said court finds upon the evidence that said property has been asssessed at more than its fair cash value, &c., it may correct the same.

The appellant claims that, as the enrolled bill is punctuated with a comma after the word "assessed" (see *supra*), it should be read and interpreted as though a comma was placed immediately after said word, which, being done, would authorize the county court to hear evidence and reduce the assessments upon all the property situated in the county, without regard to the time of assessment, although the board of supervisors had met and adjourned. In other words, the county court has jurisdiction to correct any erroneous assessment after the meeting or action of the board of supervisors, provided the application is made

at the next regular term of said court. It is true that the enrolled bill is punctuated in the manner that is claimed by the appellant; but if it were true that the punctuation would have the effect contended for by the appellant, we, nevertheless, are confronted with the section *supra*, which changes that punctuation, and gives the section a different meaning; and as the statutes containing said section as punctuated were, after the enrolling of said bill, adopted by the Legislature, they, as to any and all changes, supersede said bill. Besides, the meaning of said section as thus punctuated accords with said chapter, which takes from the county court all supervisory jurisdiction over assessments, except as therein specified. This is shown by sections 14, 22, 23 and 25, article 6. Section 14 provides that the assessor shall report to the county court clerk all persons refusing to give him a list of their property, &c., and the clerk shall notify the supervisors of the justices' district in which such persons live; and if such supervisors fail to get a full and complete list of the property of such persons, they shall notify the clerk, and then the court, after giving as many as five days' notice, &c., shall ascertain whether said property is subject to assessment, and whether the owner has been willfully delinquent, and if so, to fix a triple tax upon the same, and fine the owner one hundred dollars as a penalty for such delinquency. Section 22 provides that when it shall be known to the sheriff that any person has refused to list his property, the same proceedings shall be had as in case of delinquents reported by the assessor. Of course it is not this action of the court

that it is authorized to correct, because that tribunal has already rendered judgment, and it would be folly to allow an appeal to it. But if the court finds that the property is subject to taxation, and its owner has not been willfully delinquent, it is the duty of the clerk to make the assessment as in other cases provided, with which the court has nothing to do (see Commonwealth, for Use of Warren County, v. Louisville & Nashville R. Co., 89 Ky., 134), and to report the same to the county board of supervisors if they have not met for that year; if they have, then the owner has the right to apply to the county court, &c. Section 23 provides that if any person has failed to list his property because not called upon by the assessor, it is his duty, after the assessor has returned his tax-book, to list the same with the county clerk, whose duty it is to receive the same, and to be governed by the law regulating the duty of the assessor. If it is listed before the meeting of the board of supervisors, it is the duty of the clerk to report the list to them, upon which they will pass as in case of other assessments; but if not listed in time to be reported to said board and passed upon by it, then the person thus assessed may apply to the county judge to have said assessment corrected. Section 25 also provides that the sheriff shall report to the county clerk any list of property that has, for any year or years, been omitted by the assessor, &c., and it shall be the duty of the clerk to place the same upon the assessor's books, &c. If such lists are placed upon the assessor's books before the next meeting of the county board, it must hear all complaints as to improper listing, valuation,

&c., and correct the same; if placed upon said books after said meeting, then the county court may make said correction. So it is in these instances alone the county court has the power to revise the assessments of property made after the meeting of the county board, or too late for it to act thereon. It is to this assessment that section 3, article 8, refers.

Prior to the 17th of May, 1886, the county courts assumed to exercise the revisory jurisdiction claimed, which power, in many instances, was not wisely used. But as said act, as has been construed by this court, contains all the law upon the subject of revenue and taxation, and which does not authorize the county court to revise the assessments, except in the instances mentioned, and as the county court has no revisory power in that regard, unless the same is conferred by the statute, it must be held that the Legislature, for reasons indicated, intended to and did take away the revisory power of said court in reference to said assessments, and confined the same to the county board of supervisors, except in the instances indicated. Besides, as has been decided by this court, the equalization of assessments among the several counties by the Board of Equalization is paramount and final, and to allow such corrections as is sought here would defeat the equalization, because, if appellant's correction is permitted, it would increase the burden of other taxpayers of his county. If all citizens could avail themselves of the same privilege, the action of said board would be wholly defeated—a thing that we can not do by construction.

The judgment is affirmed.