## Burke v. Layoff.

(Decided January 9, 1918.)

Appeal from Livingston Circuit Court.

1. Ferries—Statutes—Revised Statutes—General Statutes—Adoption
—Effect.—By the adoption of the Revised Statutes, which were

prepared by commissioners appointed "to revise and arrange the statute laws of this Commonwealth, both civil and criminal, so as to have but one law on any one subject," and the subsequent adoption of the General Statutes, the legislature intended that chapter 39 of the Revised Statutes relating to ferries, and chapter 42 of the General Statutes, containing substantially the same act, should embrace all the law on the subject of ferries and to repeal all parts of former ferry acts inconsistent therewith.

2. Ferries—Franchise—Validity—Statutes—Construction.—Section 4 of chapter 39, Revised Statutes, and of chapter 42, General Statutes, now section 1803, Kentucky Statutes, providing that. "A ferry shall be established only at the instance and for the benefit of the owner of the land where it is located, or by some-one who has obtained from the owner the privilege of using the same for that purpose," applies to ferries across the Ohio river as well as other streams, and where the grantee of a ferry franchise across the Ohio river has obtained from the owner the privilege of using the owner's land for that purpose, his franchise is not void because he himself was not the owner of the land on the Kentucky shore.

3. Ferries—Franchise—Interference—Injunction.—The owner of a ferry franchise across the Ohio river is entitled to an injunction restraining a third party from interfering with said franchise by transporting freight and passengers within the limits prohibited by law, when there is sufficient evidence of such interference.

C. H. WILSON for appellant.

CHARLES FERGUSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-MISSIONER—Reversing.

Plaintiff, E. E. Burke, brought this suit to enjoin William Layoff, from interfering with his ferry franchise across the Ohio river at Carrsville, in Livingston county, by transporting passengers and freight across the river within the distance prohibited by law. Defendant pleaded in substance that plaintiff was not the owner of the land on the Kentucky shore and that the order of the county court granting the franchise was therefore void. This contention was sustained and judgment rendered dismissing the petition. Plaintiff appeals.

The principal question presented is whether a ferry franchise across the Ohio river may be granted, under our present statutes, to a person who is not the owner of land on the Kentucky shore. The proper determination of this question will necessitate a short history of our ferry legislation.

By the act of 1796, the county courts of this Commonwealth were empowered to establish public ferries across the rivers or creeks "within their respective counties," but no ferry could be established unless the parties owning land on both sides of the river or creek had received one month's notice of the application. 1 Littell 361. By an act which became a law in the year 1798, it was made lawful for any person applying to the county court to establish a ferry across any water course, if the applicant was the owner of the land on one or both sides of such water course. 2 Littell 219. There being some doubt as to the right of the county courts, under the existing acts, to grant ferry franchises across the Ohio river, the legislature in the year 1806 passed an act confirming the ferry privileges theretofore granted across the Ohio river and authorizing the several county courts to grant such privileges thereafter. The act further required that the person to whom the privilege was granted should excute bond to the Commonwealth in the sum of $1,000.00, that he would at all times keep good and sufficient boats for the transportation of passengers, carriages, and other personal property across said river, and give immediate passage to such passengers, carriages or property, except when the river was impassable. The form of the bond was prescribed by the act and contained the following recital: "The condition of the above obligation is such that whereas a ferry has been established from the land of the said        in the county of        across the Ohio river to the opposite shore." 1 Littell (1822) 599. In construing this act in a number of cases, this court held that although the act did not expressly require that the applicant should be the owner of the land on the Kentucky shore, there could be no doubt from the recital in the bond that the legislature so intended. Trustees of Jefferson Seminary v. Wagnon, 2 A. K. Marshall 379; Kennedy's Heirs v. Trustees of Covington, 8 Dana 50; Dixon Givens v. Robert Pollard, 3 A. K. Marshall 320; Givens v. Ferguson's Heirs, 6 B. Monroe 187.

The third constitution of Kentucky provided that the General Assembly at its first session after the adoption of that instrument, should appoint not more than three (3) persons learned in law, whose duty it should be "to revise and arrange the statute laws of this Commonwealth, both civil and criminal, so as to have but one law on any one subject." Third constitution, article

8, section 22. Pursuant to this provision and an act of the General Assembly, C. A. Wickliffe, Squire Turner and S. S. Nicholas, were appointed commissioners. The statutes as revised by them and embraced in the "Revised Statutes of Kentucky," published in the year 1852, were adopted by the General Assembly at the 1851-52 session. The act relating to ferries is chapter 39 of that revision and may be found on page 357. It contains 24 sections. By the first section, the several county courts are given jurisdiction to establish ferries and grant ferry privileges upon any public stream "in or adjoining their respective counties." Section 4, is as follows:

"A ferry shall be established only at the instance and for the benefit of the owner of the land where it is located, or by someone who has obtained from the owner the privilege of using the same for that purpose."

The applicant is required to give a covenant to the Commonwealth that he will keep the ferry according to law and pay all damages that anyone may sustain by reason of his failure to do so, or by reason of any neglect or misconduct of those managing the ferry, or by reason of the insufficiency of any boat employed thereat. The covenant of the owner of a ferry on the Ohio river must, in addition, promise to pay the owner of any slave any damages which he may receive by reason of the illegally transporting or attempting to transport, the slave across that river. It is also provided that the surety of the owner of a ferry right on the Ohio river, shall be good for at least $3,000.00, and anywhere else for at least $500.00. Besides four or five other sections relating to ferries on the Ohio river, the act provided: "No ferry shall be established on the Ohio river within less than a mile and a half nor upon any other stream wtihin less than a mile of the place in a straight line where any existing ferry was pre-established—unless it be in a town, or city, or where an impassable stream intervenes." Here then we have an act covering the entire subject of ferries, prepared by commissioners, who were authorized to reduce the statute law "so as to have but one law on the same subject," and adopted by the legislature. Not only so but the Revised Statutes were subsequently revised by the General Statutes, which were adopted by the legislature, acts 1873, chapter 1011, page 53, and the provisions of chapter 39, of the Revised Statutes re-enacted with certain immaterial changes, General Statutes, chap-

ter 42, page 479, and we have frequently written that the object of that revision was to enact a system of laws in a condensed form and embracing all statutory enactments of a general nature, other than those excepted in the act adopting the General Statutes, and that with these exceptions, which are not material to this controversy, the General Statutes must be regarded as containing all the statute law on the subjects indicated by the titles therein. Broaddus's Devisees v. Broaddus's Heirs, 10 Bush 299; Bunnell, &c. v. Bunnell, 111 Ky. 581. By its very terms, the ferry act as set forth in both the Revised and General Statutes, is general in its character, and applies to all ferries, whether across the Ohio river or other streams. The old form of bond which was the basis of this court's ruling, that a ferry across the Ohio river could only be granted to the owner of land on the Kentucky shore, is omitted from the act and a new covenant substituted therefor. Wherever a different regulation is intended to apply to ferries across the Ohio river, it is clearly provided for. The conclusion is therefore irresistible that the legislature intended the act in question to be the whole law on the subject of ferries and every provision of that act to apply to ferries across the Ohio river, unless otherwise provided in the act. Section 4, *supra*, of chapter 39, Revised Statutes, and of chapter 42, General Statutes, authorizing the granting of a ferry franchise either to the owner of the land or to someone who has obtained from the owner the privilege of using the same for that purpose, contains no language limiting its application to ferries across streams other than the Ohio river or indicating a legislative intent to exclude ferries across the Ohio river from its operation. Under these circumstances, it must be held to include ferries across the Ohio river as well as other streams, and to repeal all former ferry acts inconsistent therewith. And since that section was in full force and effect when plaintiff's franchise was granted, Kentucky Statutes, section 1803, and since it affirmatively appears that plaintiff had obtained from the owner of the land on the Kentucky shore, the privilege of using same for ferry purposes, it likewise follows that plaintiff's franchise was not void, because he himself was not the owner of the land.

In our opinion the evidence was sufficient to show that defendant was interfering with plaintiff's franchise

by transporting freight and passengers within the limits prohibited by the statute.

Wherefore the judgment is reversed and cause remanded with directions to grant plaintiff the relief prayed for.