## Fidelity & Columbia Trust Co. v. Meek.

April 30, 1943.

124

Bullitt & Middleton, William W. Crawford and R. Lee Blackwell for appellant.

Allen, McElwain, Dinning & Clarke for appellee.

Robert K. Cullen, amicus curiae, with L. B. Alexander, S. Y. Trimble, IV, Harry B. McCoy and Clinton M. Harbison, of counsel.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The constitutional validity and general construction of the Kentucky Revised Statutes are before the court. These questions and one of particular interpretation are presented in a suit for a declaratory judgment relating to the statutory authority of a trustee to invest the funds of an estate in "dividend-paying securities which would be regarded by prudent business men as safe investments." The specific authority contained in the Kentucky Statutes, Section 4706 (being Chap. 53, Acts of 1936, which was an amendment and re-enactment of previous acts containing the same authority, starting with Chapter 122 of the Acts of 1891, 1892, 1893) was omitted from the Kentucky Revised Statutes, enacted in 1942, as will be developed in the course of the opinion.

As is interestingly disclosed in the "Historical Introduction" to the 1936 edition of the Kentucky Statutes, prepared by Judge Richard P. Dietzman, the State has had a number of issues of Statutes under various names or designations. See, also, KRS 447.030. Some of them have been but compilations of the acts of the legislature. Pursuant to Section 245 of the current constitution, upon its promulgation commissioners were appointed by the Governor "to revise the statute laws of the Commonwealth and prepare amendments thereto to the end that the statute laws shall conform to and effectuate this Constitution." Their work was laid before the General Assembly and a bill covering each subject of legislation was enacted separately. The first compilation of these acts in 1894 by private editors and publishers was under the style of "Kentucky Statutes" and from time to time new editions were published. These were currently adopted by the legislature with the provision that the books could be cited and referred to by their section numbers as being the law of the Commonwealth. It has also been provided that the effect of the adoption should not be construed to render valid any invalid section or part thereof or to affect any law in force and effect not included in the statutes. Chap. 154, Acts of 1928, Section 2419a-3, Kentucky Statutes. The published statutes even though adopted by the legislature, being only a compila-

tion of the acts, were but prima facie the law and receivable in evidence in judicial proceedings as such. Commonwealth v. Owensboro, F. of R. & G. R. R. Co., 95 Ky. 60, 23 S. W. 868; Shannon v. Dean, 279 Ky. 279, 130 S. W. (2d) 812. All previous editions of the statutes are yet receivable as evidence of the statute laws in force at the time of their publication. KRS 447.030.

In 1936 the legislature "directed, authorized and empowered" the Governor to appoint a committee, selected from a list submitted by the Board of Commissioners of the Kentucky State Bar, to be known as the Statute Committee. The lawyers then appointed and their successors named in the report to the legislature in January, 1942, infra, have served during the six years without compensation save that which comes from public service faithfully and well performed. The Committee was directed to "revise, codify, annotate and publish the Statute laws of Kentucky" or provide that it be done under contract. The act declared that the completed statutes should be received in all the courts as prima facie evidence of the statutory law of Kentucky. A section of the act provided that the Committee should not alter the language or sense of any act of the General Assembly and that it should make reports to the Board of Commissioners of the Kentucky State Bar. Chapter 111, Acts of 1936. This act contemplated only a recodification or compilation, such as had existed since 1892, except that it should be officially published.

At its next regular session the Legislature amended that act so as to provide that the Statute Committee should submit a "definite plan" for revision and publication of the statutes. It eliminated the prohibition against changing the language, but reenacted the restriction against altering the sense of any act, and added that the Committee should make a report of its labors to the General Assembly "for its adoption or modification." Chapter 41, Acts of 1938. Thus, the Legislature was getting away from the idea of a mere compilation. It empowered the Committee to prepare and submit a complete revision, broader in its scope and more comprehensive in its purpose.

At its 1940 Session, at the instance of the Statute Committee, in order to simplify and clarify the statute laws, the Legislature repealed over 1,000 sections of the then current statutes as being "obsolete, unconstitution-

al, duplicating, redundant, or * * * repealed by implication.'' Chapter 191, Acts of 1940.

The Statute Committee made a report of its labor to the General Assembly at its 1942 Session. Ky. Revised Statutes, p. 11. It submitted a copy of a revision of the statutes, under the style ''Bill to Revise the Kentucky Statutes,'' which had been prepared from all the enrolled bills enacted since 1873, when the General Statutes were adopted. The Committee recommended that the tendered bill be enacted into law. The report called attention to a section to the effect that the text of the Revised Statutes speaks for itself without reference to the language of any prior legislation except in instances of ambiguities and implied repeals. See KRS 446.130. The General Assembly unanimously enacted this volume under the following title:

''An Act revising the statute laws of the Commonwealth, enacting the revised statutes as the law of the Commonwealth, repealing all prior statute laws of a general and public nature, and prescribing the effective date of this Act.''

The repealing paragraph of the act is as follows:

''All statute laws of the Commonwealth of a general and public nature enacted prior to the present session of the General Assembly, except the Codes of Practice and such statute laws as are continued in force by express provision in the body of sections of the Kentucky Revised Statutes, are hereby repealed.''

The act was approved by the Governor and became effective by its terms on October 1, 1942. Chaper 208, Acts of 1942.

The Kentucky Revised Statutes were, therefore, enacted as the law of the Commonwealth and not adopted as a compilation. The distinction is important. It is well drawn in brief filed herein by the members of the Statute Revision Commission and their editor-in-chief as amici curiae, as follows:

''A compilation is merely an arrangement and classification of the legislation of a state in the exact form in which it was enacted, with no change in language. It is merely a bringing together in a convenient form of the various acts of legislation en-

acted over a period of time. It does not purport to restate the law or to be a substitute for prior laws. It does not require any legislative action in order to have the effect it is intended to have. It is not the law but merely evidence of the law. The various editions of Carroll's Statutes in use in Kentucky prior to 1942, and recognized as prima facie evidence of the law by legislative acts of recognition, were nothing more than compilations. A revision, on the other hand, contemplates a redrafting and simplification of the entire body of statute law. It involves the elimination of duplications, contraditions, obsolete and obsolescent provisions, redundant, tautological, prolix and verbose provisions. A revision is a complete restatement of the law. It requires enactment by the legislature in order to be effective and upon enactment it becomes the law itself, replacing all former statutes." See 59 C. J. 888; 25 R. C. L. 924.

The procedure in this revision of the statutes was patterned after that followed in enacting the General Statutes in 1873. That publication superseded the Revised Statutes which had gone into effect July 1, 1852. In Broaddus' Devisees v. Broaddus' Heirs, 73 Ky. 299, 10 Bush, 299, the court was confronted with conflicting provisions in the two publications. The bill enacting the General Statutes contained a provision repealing all repugnant statutes. The Court held "The General Statutes must be regarded as containing a complete system of laws" and that "it must be considered and treated as all the statute law on the subject indicated by the title." In Ward v. Beale, 91 Ky. 60, 14 S. W. 967, where there was a difference in punctuation in an enrolled bill and in the General Statutes subsequently enacted, which imported a different meaning, the court held that the statute controlled. The same regard of finality and vitality was given the Revised Statutes enacted at the 1851-1852 session of the General Assembly following the adoption of the Constitution of 1850. Burke v. Layoff, 178 Ky. 588, 199 S. W. 775. See, also, Overfield v. Sutton, 58 Ky. 621, 1 Metc. 621; Allen v. Ramsey's Heirs, 58 Ky. 635, 1 Metc. 635. Compare Buchannon v. Commonwealth, 95 Ky. 334, 25 S. W. 265, holding that the enactment of a revision of the criminal law of the Commonwealth superseded all existing statutes of that nature. These decisions are in accord with the con--

struction of similar revisions of statutes in other states. It is generally held that, except as it may be otherwise specially provided, such enactments are substitutes for former laws; that former statute publications are deemed repealed and changed thereby; that the enactment of revised statutes gives force and effect to every provision in the entire work; that whatever it contains must be treated as being put there deliberately by the Legislature with the intent that everything in it should have vitality; that such revision embodies and is the reservoir of the entire statutory law so that laws previously existing and omitted therefrom cease to exist and such additions as appear therein are the law from the time the act is approved. Any error in the revised law except as hereinafter noted must be corrected by subsequent legislative action. The leading case on this subject is Central of Georgia Ry. Co. v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518. A well considered and reasoned case on the subject is American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S. W. 1019. It traces the origin of the plan of revising and publishing statutes as the law to the Code of Justinian, promulgated in A. D. 534.

. There are many other cases declaring that the enactment of revised statutes makes them the law. Among them are United States v. Bowen, 100 U. S. 508, 25 L. Ed. 631; Hamilton v. Rathbone, 175 U. S. 414, 20 S. Ct. 155, 44 L. Ed. 219; Martin v. Johnson, 33 Fla. 287, 14 So. 725; Conway v. State, 57 Ariz. 162, 112 P. (2d) 218; Cavadini v. Larson, 211 Wis. 200, 248 N. W. 209; McIntire v. McIntire, 130 Me. 326, 155 A. 731; Nigro v. Flinn, Del. Super., 192 A. 685; see also 59 C. J. 887, 891, 897; Lewis' Sutherland on Statutory Construction, Section 269; Crawford, Statutory Construction, Section 129. However, the general construction ascribing exclusive efficacy and validity to Revised Statutes enacted as a unit has been qualified to the extent of holding that the publication cannot give validity to an act originally void because of the absence of legislative power to pass it or because inherently defective in the subject matter itself. 59 C. J. 892.

We, therefore, hold that the Revised Statutes of Kentucky, together with the other acts enacted at the 1942 sessions of the General Assembly, constitute the statutory law of the Commonwealth.

The question arises whether the enactment of this

conclusive law of such broad scope and extraordinary effect, embracing a multiplicity of subjects which are unrelated when considered independently, offends Section 51 of the Constitution. It declares in part: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." We have already copied the title of the act.

It does not appear that this question was raised in relation to the enactment of the Revised Statutes of 1852 or the General Statutes of 1873, although the Constitution of 1850, art. 2, Section 37, contained a similar restriction. The purpose of the constitutional provision originally was to remedy the evils of a practice of uniting in the same act subjects which had no relation to each other and of amending a bill by introducing into it matters wholly distinct and unconnected, thereby bringing an improper influence upon its final passage. To prevent a resumption of that practice is, of course, its present purpose. Many years ago it was declared by the court that the provision should be construed so as to render it effectual in accomplishing that object and not construed to restrict the Legislature to an extent that would render different acts necessary where the whole subject matter is connected and can properly be embraced in one enactment; that, looking to the evil intended to be remedied, there should not be a technical construction but a reasonable construction in accordance with the spirit and meaning of the constitutional provision. Phillips v. Covington & Cincinnati Bridge Co., 59 Ky. 219, 2 Metc. 219. Throughout the years this regard for the constitutional provision has been observed by this court and by other courts in states whose constitutions have similar restrictions.

The Act of 1942 revising the statutory laws was prepared with great care and ability by outstanding lawyers of the state and an efficient and experienced editor. They had been constituted a special agency of the Legislature under express direction to submit a definite plan of revision without altering the sense of the previous enactments. The single object and end to be accomplished was to enact the revision according to the plan which the Statute Committee submitted. It contains no new legislation except as pertains to the fact of revision and how it should be construed. There are no strange or incongruous laws included in it, nor any substantial repeal.

or amendment of existing laws. It was intended to be a restatement of existing law in better form. The authorities seem to be quite uniform to the effect that the commendable policy of incorporating the entire body of the law in a revision by a single act, under a comprehensive title instead of dividing it into separate acts, does not violate a constitutional prohibition against any act embracing a plurality of subjects, although it may in itself contain a great many diverse, individual subjects. All that is required is that such an act shall not include legislation so incongruous that it can not be fairly said to be relevant or germane to the one general subject of revision. The conclusion is rested upon different reasons. Principally they are that such procedure is not adverse or obnoxious to the spirit and intent of the provision, for the mischief and evil intended to be avoided are not present since there is a unity of purpose; that no one is misled; that it is not new legislation; that the different chapters and sections are germane and relate to the one object of gathering together a unified system of law in a clarified and concise form for convenient use; and that division among separate acts would not only be contrary to the spirit of the Constitution but also embarrassing to honest legislation. 25 R. C. L. 867; 59 C. J. 889; note, 55 L. R. A. 833; Central of Ga. Ry. Co. v. State, supra; Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923; 28 Am. St. Rep. 382; State v. Habig, 106 Ohio St. 151, 140 N. E. 195; Marston v. Humes, 3 Wash. 267, 28 P. 520; State v. Vestel, 81 Fla. 625, 88 So. 477; Evans v. Superior Court, 215 Cal. 58, 8 P. (2d) 467; State v. Czarnicki, 127 N. J. L. 43, 10 A. (2d) 461; Chumbley v. People's Bank & Trust Co., 166 Tenn. 35, 60 S. W. (2d) 164.

As suggested above, this court has not hitherto been called upon to consider the application of the restriction of Section 51 of the Constitution or similar provisions in previous Constitutions to a revision or reenactment of all statutory laws. But we have often declared that if all provisions of the body of an act relate to the same subject and are naturally connected with it, it is within the legislative right to include them in one act under a general title. We have considered it in principle in connection with acts very broad in their scope. Perhaps the most extensive was the "Administrative Reorganization Act" of 1934, c. 155, stated in its title to be "to reorganize and simplify the executive department of the state government." The Act was quite revolutionary and em-

braced many details of an infinite variety. Reviewing the purpose of Section 51 of the Constitution to limit acts to one subject to be expressed in the title, the law was declared constitutional because it dealt with one general subject. Talbott v. Laffoon, 257 Ky. 773, 79 S. W. (2d) 244. It is noted that in the revision of the statutes in 1893 by separate enactments to conform to the recently adopted Constitution, the charters of the several classes of cities were contained in one bill, respectively, although each embraced the entire governmental structure of the cities with many subdivisions. Thus the charter of cities of the first class, with all its details respecting legislative, executive and judicial powers, as well as those which are proprietary, was enacted under the simple title of, "An Act for the government of cities of the first class." Acts of 1891, 1892, 1893, Ch. 244. Of like character was the enactment of all the statutory laws relating to criminal offenses. Acts of 1891, 1892, 1893, Ch. 182. There were other acts of a similar comprehensive nature. None of these appear to have been questioned, and it is significant that several of the members of the recent Convention which framed the Constitution were members of that Legislature.

We, therefore, hold the Act constitutional.

We come to the particular question raised by the appeal.

When first enacted in 1892, and throughout several amendments, Section 4706, Kentucky Statutes, was in part as follows:

> "It shall be lawful for persons or corporations holding funds in a fiduciary capacity for loan or investment, to invest the same in * * * other interst [interest] bearing or dividend paying securities which would be regarded by prudent business men as safe investments."

The Act revising the statutes (Ch. 208, Acts of 1942) brought together several provisions relating to the administration of trusts and the investment of trust funds. Title XXXIII, ch. 386, House Bill 271. Section 386.020 is in part as follows:

> "(1) Any fiduciary holding funds for loan or investment may invest them in:
>
> "(h) Real estate mortgage notes, bonds and

other interest bearing securities which would be regarded by prudent business men as safe investments; * * *''

It will be observed that the words ''or dividend-paying'' are omitted. However, the published first edition of the Revised Statutes containing the Act and all other laws passed at the 1942 session of the General Assembly put those words back in the statute, so that it declares that any fiduciary may invest funds in ''other interest-bearing or dividend-paying securities,'' etc.

The question is whether it is lawful for the appellant as trustee to retain the investment of funds of an estate in valuable and dividend-paying stocks and to continue to make similar investments. We pass by the arguments on the one side that the statute is and always has been prohibitive or exclusive in its nature, and on the other side, permissive in its effect with the real test of fidelity being the rule of good faith and reasonable prudence, the statute creating only the presumption of prudence.

Robert K. Cullen, Editor-in-Chief of the revision and now Reviser of Statutes, testified that the omission of the phrase ''or dividend-paying'' was unintentional and the result of a clerical error made by one of his assistants. He produced some working notes which showed where the mistake was made in copying during the process of revision. While it has been held that consideration may be given to the notes or reports of commissioners who drafted a revision of statutes to explain the meaning of a particular one (59 C. J. 1102), that consideration should be confined to cases of ambiguity in the language of the revision. Resort to extraneous evidence we do not think proper where the language is plain and the meaning clear. It may be said that this is in accordance with the argument in brief of the Statute Revision Commission and the Editor filed herein.

Justification for making the correction in the first edition of the Revised Statutes is sought to be rested upon another act corollary or supplementary to that enacting the revision of the statutes as the law of the Commonwealth. By Chap. 86 of the Acts of 1942, the Legislature created a permanent Statute Revision Commission and the office of Reviser of the Statutes and defined their functions. KRS 447.110, a part of this Act, provides that in preparing editions of the statutes for publication the Commission ''shall not alter the sense,

meaning or effect of any Act of the General Assembly,"
but enumerates several things which that body may do,
concluding with "and correct manifest clerical or typo-
graphical errors." All of these things relate to matters
of form only and all are editorial and clerical in nature.
We are of opinion that the change in language of such
import as the insertion of the phrase involved in this
case is too closely related to legislation itself to be em-
braced within the authority conferred upon the Commis-
sion and Reviser by KRS 447.110.

The same Act of 1942 provides that the publication
of the Revised Statutes as certified to the Secretary of
State in the manner prescribed "shall constitute prima
facie evidence of the law in all courts and proceedings."
Section 5. Thus, the original act of revision (Chap. 208,
Acts of 1942) together with subsequent enrolled bills,
duly authenticated, is the law, and the publication is
prima facie evidence of it. See p. 2829, Ky. Revised Stat-
utes. This carries us back to the original act of revision
from which was omitted the phrase "or dividend pay-
ing" securities and requires its construction.

Sec. 446.080 of the original act (like Sec. 460, Ky.
Statutes) provides that the statutes "shall be liberally
construed with a view to promote their objects and carry
out the intent of the legislature." KRS 446.130 declares
that:

"The Kentucky Revised Statutes of 1942 are intend-
ed to speak for themselves, and all sections of the
Kentucky Revised Statutes of 1942 shall be con-
sidered to speak as of the same date, except that in
cases of conflict between two or more sections or of
a latent or patent ambiguity in a section, reference
may be had to the Acts of the General Assembly
from which the sections are indicated to have been
derived, for the purpose of applying the rules of
construction relating to repeal by implication or for
the purpose of resolving the ambiguity."

This is only legislative sanction of the judicial pro-
cesses, for the court held in reference to the Revised
Statutes of 1852 and the General Statutes of 1873, as we
have already indicated, that it was never contemplated
that both the old and the new statutes should be consid-
ered together in determining what the law was in the
absence of ambiguity, but if the intent of the revised

statute was doubtful or uncertain it was proper to resort to the original acts from which it was derived. Broaddus' Devisees v. Broaddus' Heirs, supra; Trustees of Baptist Female College v. Barren County Board of Education, 190 Ky. 565, 228 S. W. 19. This is in accord with the general rule and conception of the law of statutory construction. 25 R. C. L. 1065; 59 C. J. 1098; Crawford, Statutory Construction, Sections 324, 325; Lewis' Sutherland on Statute Construction, Sections 450, et seq. And the expressed legislative purpose that all sections of the revised law are to be considered as speaking at the same time (KRS 446.080 quoted above) requires that all its various provisions be considered and interpreted as parts of a single statute and brought into harmony and agreement. Central of Georgia Ry. Co. v. State, supra.

Ambiguity of a statute or other writing may exist on its face, i. e., there may be confusion, doubt or uncertainty of meaning within itself. It may develop when the statute is brought into contact with collateral facts, as where the consequences or results of a literal application of the language would be absurd or unreasonable. Or it may arise from a conflict between the provisions of the particular section, and other provisions or sections in pari materia.

As is well said in Bridgeman v. City of Derby, 104 Conn. 1, 132 A. 25, 27, 45 A. L. R. 728:

> "The intent of the lawmakers is the soul of the statute and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute."

So it has always been a recognized power of the courts in the construction of a statute to delete or interpolate words to prevent an absurd consequence or to resolve an ambiguity in order to carry into effect the spirit, purpose and intent of the law-makers. Sams v. Sams' Adm'r, 85 Ky. 396, 3 S. W. 593; Barron v. Kaufman, 131 Ky. 642, 115 S. W. 787; Commonwealth v. Fenley, 189 Ky. 480, 225 S. W. 154; Barker v. Stearns Coal & Lumber Co., 287 Ky. 340, 152 S. W. 953; Grieb v. National Bond & Investment Co., 264 Ky. 289, 94 S. W. (2d) 612.

The absence from the statute of the provision authorizing the investment of trust funds in dividend-pay-

136

ing securities, i. e., stocks of proven and recognized security and value, develops an ambiguity. First, the phrase "interest-bearing securities" is susceptible of construction to include dividend-paying stocks. See Smith v. Southern Foundry Co., 166 Ky. 208, 179 S. W. 205; Burt v. Rattle, 31 Ohio St. 116; Trustees of University v. North Carolina R. Co., 76 N. C. 103, 22 Am. Rep. 671. Fletcher's Cyclopedia on Corporations, 1932 Edition, Volume 11. Secondly, we cannot bury our heads in the sand and say that we do not know that it has always been the common practice of prudent business men to invest their funds in such stocks and that it was lawful for trustees to do so at common law and under the statute for more than 50 years. It would be unreasonable to say that the legislature had any intention of making such investments unlawful. Thirdly, there are several other sections of the new statutes as originally enacted which recognize that fiduciaries may hold stock in corporations. KRS 271.180 (3) relates to their non-liability as stockholders. KRS 271.200 (1) provides they may vote the shares. KRS 386.080 (1) provides that fiduciaries holding securities for loan or investment may sell and transfer them whenever in their judgment the sale would benefit the trust estates, but qualifies this right in the case of personal representatives by providing that they must obtain an order of court before selling "any dividend-paying stocks, bonds or other security which the decedent owned at his death." KRS 395.230 relates to transfers of stocks owned by a decedent at his death "or which was acquired after that by the estate." KRS 386.080 (3) relieves a purchaser of stock in good faith for value from a fiduciary from the duty of looking to the application of the proceeds. All of these statutes presuppose the right of a trustee or other fiduciary to hold or invest trust funds in corporate stocks. And, it may be added, the safety feature of such investments is taken care of by the provision of KRS 386.020 that the securities must be such as would be regarded by prudent business men as safe.

Therefore, the doubt in relation to the term "interest-bearing securities"; the historical setting of the new statute and unreasonable result of a strict and literal construction; and the duty of reconciling or harmonizing the inconsistency with other cognate sections, we think justify the conclusion that it was not intended by the Legislature to place "dividend-paying stock" in a

class of investments different from others enumerated in KRS 386.020, as originally enacted.

In Pfingsten v. Pfingsten, 164 Wis. 308, 159 N. W. 921, the Supreme Court of Wisconsin had before it a case where a revised statute, literally construed, would bar any division of property between husband and wife in a divorce action if the divorce was granted on the grounds of the wife's adultery. Applying the rules above outlined the court held the revised section meant the same as the original section, which only denied alimony to the adulteress. This was followed in State ex rel. Globe Steel Tubes Co. v. Lyons, 183 Wis. 107, 197 N. W. 578, in which the court held it could supply the words "joint stock company or association," which had been omitted from an Act revising the income tax laws.

The judgment being in accord with the views above expressed it is affirmed.

Whole Court sitting.