**LINCOLN COUNTY FISCAL COURT, Appellant,**

v.

**DEPARTMENT OF PUBLIC ADVOCACY, COMMONWEALTH OF KENTUCKY, Appellee.**

No. 89–SC–71–DG.

Supreme Court of Kentucky.

June 28, 1990.

Rehearing Denied Sept. 27, 1990.

James W. Williams, III, Lincoln County Atty., Stanford, Dennis L. Mattingly, Williams & Wagner, Louisville, for appellant.

J. Vincent Aprile, II, Asst. Public Advocate Gen. Counsel, Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed an order of the circuit court which had required the Department of Public Advocacy to pay for the costs of private mental health experts in the defense of an indigent imprisoned defendant.

The issue is who is responsible to pay for an indigent defendant's mental health experts when that defendant is confined in a state correctional institution.

At the time the criminal defendant requested the payment of costs for mental health experts, he was already confined in a state correctional institution. His confinement was a result of his conviction in Madison County for capital murder which he had committed one month after the crimes he allegedly committed in Lincoln County.

K.R.S. 31.185 permits a defense attorney the use of state facilities for the evaluation of evidence. The trial judge may also authorize the use of private facilities to be paid for by the county. K.R.S. 31.200(3) requires that payment for mental health experts be borne by the Department of Public Advocacy when the defendant is incarcerated at the state prison at the time of the use of the mental health experts even though the experts are being used for a crime committed prior to the imprisonment.

The trial judge held that the Department of Public Advocacy was responsible for the payment of the experts pursuant to K.R.S. 31.200(3). The Department argues that Lincoln County was liable for payment under K.R.S. 31.185 as interpreted in *Perry County Fiscal Court v. Commonwealth*, Ky., 674 S.W.2d 954 (1984), and that it is only required to pay the costs of the defense of crimes committed at a state cor-

rectional institution by an indigent person. The defendant in the Madison County case was represented by a private attorney and apparently asserted the defense of insanity. After being convicted and sentenced to death, his appeal was assumed by the Department of Public Advocacy. The defendant has always been represented by the Department in the Lincoln County case. In that case, the public defender requested funds for the employment of mental health experts to analyze various mental functions and ultimately to testify for the defense.

The language of K.R.S. 31.200(3) is clear and unambiguous. It provides as follows:

Expenses incurred in the representation of needy persons confined in a state correctional institution shall be borne by the State Department of Public Advocacy.

Prior to 1976, this section of K.R.S. 31.200(3) had read as follows:

Expenses incurred in the defense of needy persons confined in a state correctional institution who are charged with a serious offense committed at such institution shall be borne by the state office of public defender.

Consequently, in 1976, K.R.S. 31.200(3) was amended so that the requirement that the offenses were to have been committed within the institution was deleted and the language now simply provides that expenses incurred in the representation of a needy person who is in a state correctional institution is to be borne by the Department. There are no conditions, limitations, restrictions or other qualifications now included in the statute.

 Where the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written. *Griffin v. City of Bowling Green*, Ky., 458 S.W.2d 456 (1970). An unambiguous statute must be applied without resort to any outside aids. *Delta Airlines, Inc. v. Commonwealth of Kentucky, Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985).

The exact question presented here has not been previously decided. None of the cases cited by the Department or noted by the Court of Appeals concerns who is to pay for psychiatric evaluation as between the Department and the county in this context. The cases used by the Department are distinguishable on their facts and do not concern a prisoner who is in the custody of the Department of Corrections but is being tried for crimes committed *prior* to the incarceration. *Perry County Fiscal Court, supra,* is also not applicable in this situation.

When the plain wording of the present statute is compared with that of the statute prior to 1976, it is obvious that the clear legislative intent is to abandon the former policy that the Department should pay only those costs for crimes committed at a correctional institution in favor of a policy that the Department pay the costs of defense for all crimes committed by indigent inmates who are now committed to prison facilities regardless of where those crimes were committed.

The Court of Appeals expanded the meaning of the statute to arrive at what it believed the legislature intended. In applying its rationale to the statute, it created direct conflict with the clear meaning of the words. The court must apply the statute as written and leave any changes to the General Assembly.

K.R.S. 441.047 is not properly before this Court for review and accordingly will not be considered.

██ It is the holding of this Court that the clear and unambiguous meaning of K.R.S. 31.200(3) requires that the Department of Public Advocacy must bear the expenses for mental health experts for indigent persons confined in a state correctional institution regardless of the time or location of the crime.

The decision of the Court of Appeals is reversed and this matter is remanded to the circuit court for appropriate disposition.

STEPHENS, C.J., and COMBS, LAMBERT, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which GANT, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The heart of the Majority Opinion is its conclusion that "[t]he language of KRS 31.200(3) is clear and unambiguous." Considered in context, such is not the case.

This is but one subsection of the statutory scheme *originally* intended to provide for the "defense of indigent persons," H.B. 461, Ch. 353, Sec. 1, 1972, and subsequently expanded to include also "representation of indigent persons accused of ... mental states which may result in their incarceration or confinement." S.B. 266, Ch. 177, Sec. 1, 1976; now codified as KRS 31.-010(1). In expanding Ch. 31 to cover representation in involuntary commitment of the mentally ill as well as defense of criminal cases, the General Assembly dropped the phrase in KRS 31.200(3) which leads to the decision of the Majority of our Court. The phrase in KRS 31.200(3) which was deleted, "who are charged with a serious offense committed at such institution," would have created confusion when public defender service was expanded to include representing the mentally ill.

Our Majority decision transfers the burden of paying the expense for trial expert evaluation and testimony from the counties which have elected to support the public defender system, where the responsibility is located under the statutory scheme, to the office of public defender. This approach disregards the language in subsection (1) KRS 31.200, which was *not* changed, specifying that "any direct expense, ... necessarily incurred in representing a needy person under this chapter, is a charge against the county on behalf of which the service is performed." Worse yet, it sets the stage for an unconscionable result: counties can avoid their statutory responsibility to pay the "direct expense" (KRS 31.200(1)) incurred in felony prosecutions in their county by the simple expediency of delaying prosecution where the defendant is charged with another serious felony offense in a different county. It rewards the county who waits to prosecute until after conviction and sentencing elsewhere.

The statutory scheme established in KRS Chapter 31, in setting up "a state-wide public defender system" (H.B. 461, Ch. 353, 1972, *supra*), envisions the participation by election of the fiscal courts of the various counties. KRS 31.160, et seq. Where, as here, the county elects to participate, KRS 31.200(1) places the burden of a "direct expense" such as presently involved squarely on the county. The purpose of subsection (3) was not to divest the county of that burden except in those cases involving indigents "charged with a serious offense committed at ['a state correctional'] institution." The reason for this has not changed. Counties such as Oldham and Lyon should not be expected to bear the burden of the large expenses from crimes committed by prisoners brought from all over to be lodged within the correctional institutions located within these counties. It is one thing to say counties should not be expected to bear the burden of these kind of expenses, and quite another to say that counties should not be expected to bear the burden of paying expenses necessarily incurred in trial of crimes committed on the citizens of the county, crimes in which the county has a direct interest. This "is a charge against the county on behalf of which the service is performed." KRS 31.-200(1), *supra*. The 1976 Act of the General Assembly does not shift the burden to pay these direct expenses to the state public defender's when, fortuitously, the indigent defendant has been locked up in a state institution between the time the crime was committed and the accused is brought to trial. The Act of the General Assembly is not arbitrary and unreasonable, and our Opinion should not interpret it in a way that makes it so.

The Majority Opinion rests entirely on the "plain meaning" principle of statutory construction which controls where the words of the statute are "clear and unambiguous." This presupposes that such is the case. It is our duty to decide what the legislature has done, and the "plain meaning" rule is but a guideline in trying to do so. Indeed, properly stated, the rule is:

"We have a duty to accord the words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves*, Ky., 662 S.W.2d 832 (1984).

Reason and common sense should not be strangers in the house of the law. In the present case, when we view the statutory structure in its entirety, reason and common sense compel the conclusion that the General Assembly did not intend to tear a hole in the fabric of the statute by the 1976 Amendment to KRS 31.200(3). It only intended to accommodate the purpose of the amending act, which was to expand public defender coverage to involuntary commitment. To accommodate this change necessitated dropping the phrase presently involved. As we stated in *Bd. of Educ. v. Logan Aluminum Inc.*, Ky., 764 S.W.2d 75 (1989), when confronted with a similar problem in statutory interpretation:

"Our mandate does not demand tunnel vision but reasoned analysis of the statutory scheme. *Id.* at 78.

. . . .

We must assume that the legislature intended to create a workable procedure and construe the statutes involved to provide one rather than acceding to a hyper-technical, literal interpretation that would lead to a wholly unreasonable conclusion." *Id.* at 80.

The Court of Appeals' Opinion which we now reverse states:

"However, ambiguity in a statute may develop when literal application of the plain wording of the statute would lead to an absurd or unreasonable result or the statute conflicts with other statutory provisions in pari materia. *See Fidelity & Columbia Trust Co. v. Meek*, 294 Ky. 122, 171 S.W.2d 41 (1943). Furthermore, regardless of the actual language used we must 'give effect to the intention of the lawmakers.' " *See Green v. Moore*, 281 Ky. 305, 135 S.W.2d 682, 683 (1939).

Applying these principles, the Court of Appeals decided "the 1976 change in the language of KRS 31.200(3) was not intended to make the Department of Public Advocacy responsible for bearing the expenses of the defense of a crime allegedly committed by a defendant confined in a state correctional institution when the commission of the crime took place outside the correctional institution itself." This decision was correct, and should be affirmed.

GANT, J., joins this dissent.