Ted COLLINS, in His Official Capacity as Franklin Sheriff and Franklin County Sheriff's Department, Appellants,

v.

Josephine HUDSON, Administratrix of the Estate of Christopher Lee Pettit, Appellee,

and

City of Frankfort, et al., Appellants,

v.

Josephine Hudson, Administratrix of the Estate of Christopher Lee Pettit, Appellee,

and

Josephine Hudson, Administratrix of the Estate of Christopher Lee Pettit, Appellant,

v.

Ted Collins in His Official Capacity as Franklin County Sheriff, et al., Appellees.

No. 1999–SC–0100–DG.

Supreme Court of Kentucky.

June 14, 2001.

John Michael Brown, Steven L. Snyder, Kenneth W. Brown, Wyatt, Tarrant & Combs, Louisville, Counsel for City of Frankfort, Ted Evans, City of Frankfort Police Department, and Officer Dale Roberts.

Thomas C. Lyons, Kevin L. Murphy, Murphy & Lyons, P.S.C., Covington, Counsel for Josephine Hudson, Etc.

C. Thomas Hectus, Hectus & Strause, PLLC, Louisville, Counsel for Franklin County Sheriff's Department and Ted Collins.

LAMBERT, Chief Justice.

This wrongful death case was brought by the administratrix of a police informant who was murdered by a person against whom he had informed after his identity had been disclosed by law enforcement officials. The issue before this Court is whether the officials had a statutory or common law duty to tell the informant that his identity had been revealed to defense counsel so that he could protect himself.

In September 1992, Franklin County Deputy Sheriff Joe Thornsberry and Frankfort Police Officer Dale Roberts re-

ceived information about a series of thefts in the Franklin County area and undertook a joint investigation of the crimes. As part of the investigation, Thornsberry and Roberts interviewed Christopher Pettit, who was then seventeen years old. During the interview, Pettit provided detailed information implicating Paul Reed and his wife, Trina Reed, in the series of thefts. Pettit also admitted that he took part in some of the crimes with the Reeds. Roberts and Thornsberry promised Pettit that in exchange for his testimony against Paul Reed, no criminal charges would be brought against him. During the interview, Pettit also told the officers that he was afraid of Paul Reed, who had once threatened him with a gun and in a separate incident had shot at Pettit.

In December 1992, the Reeds and a third person, Donald Bryant, were indicted for crimes arising from the theft of a truck. On February 1, 1993, the attorney who represented all three defendants, Max Smith, filed a discovery request on their behalf. The request sought, *inter alia*, the names of informants, any agreements reached between authorities and informants, and witness statements. The trial court sustained the motion and ordered Commonwealth Attorney Morris Burton to provide the requested information. On June 8, 1993, Burton met with Deputy Sheriff Thornsberry and Officer Roberts to discuss turning over Pettit's statement. During the meeting, concerns were voiced about the effect of this disclosure on Pettit's safety. Burton instructed Thornsberry and Roberts to locate Pettit and bring him in so that Burton could prepare him to testify against the Reeds at trial. That same day, Burton filed the entire investigative file in the court record and delivered a copy of the documents to defense counsel Smith, who thereafter had the file delivered to the Reed residence.

According to deposition testimony from several witnesses, on June 8, 1993, Paul and Trina Reed conspired to murder Pettit for acting as an informant and to prevent him from testifying against them at the upcoming trial. On June 9, 1993, James Reed, a relative of Paul Reed, who was then acting as a confidential informant for Frankfort Police Department Detective Terry Harrod, called the Frankfort Police Department and told them that Paul Reed was planning to hurt Pettit. It is undisputed that no one from the Frankfort Police Department, the Franklin County Sheriff's Office, or the Franklin County Commonwealth Attorney's Office notified Pettit that his identity as an informant had been revealed or that he might be in danger.

Several months before the disclosure of Pettit's identity, in late February or March 1993, Pettit went to stay with relatives in Ohio. He did not return to Frankfort until approximately June 6, 1993. According to the deposition testimony of Jonathon Cox, in the early morning of June 10, 1993, Paul Reed and Cox picked up Pettit under the pretext of taking him to Ohio to spend some money. After arriving in Ohio, Reed told Pettit to pull off the road to view a house that could be burglarized. Once out of the car, Paul Reed shot Pettit a total of eight times, and Cox cut his throat with a knife. Pettit died that day of multiple gunshot wounds to the head and stab wounds to the neck. Subsequently, Paul Reed pled guilty to aggravated murder in Ohio.

On June 9, 1995, Administratrix Hudson filed an action in the Franklin Circuit Court against the City of Frankfort; Franklin County; the Franklin County Sheriff's Office; the Frankfort Police Department; Ted Collins, in his official capacity as Franklin County Sheriff; Ted Evans in his official capacity as the Chief

of the Frankfort Police Department; Dale Roberts, individually and in his official capacity as an officer of the Frankfort Police Department; and Joe Thornsberry, individually and in his official capacity as a Franklin County Deputy Sheriff. The complaint alleged several causes of action related to the disclosure of Pettit's identity, and the failure of the various police authorities to inform him of the disclosure and protect him from harm resulting from his cooperation as an informant. The causes of action pled were based on common law negligence, negligence per se, violation of a statutory duty, negligent supervision, and the tort of outrageous conduct. Of the claims alleged, only the common law negligence claim and the claims based on a violation of a statutory duty have been presented to this Court for review.

The defendants moved for summary judgment. The trial court granted the motion, holding that the defendants owed no common law duty to Pettit under the "special relationship" test announced in *Fryman v. Harrison.*[1] The trial court also held that Thornsberry could not be held liable because he had resigned from his position as Deputy Sheriff in March 1993, some three months before the disclosure of Pettit's identity.

Hudson appealed to the Court of Appeals. Franklin County, the Franklin County Sheriff's Department, Joe Thornsberry, and Sheriff Ted Collins cross-appealed challenging the constitutionality of KRS 421.500(4) and claiming a failure to join indispensable parties. The Court of Appeals agreed with the trial court that a common law action was foreclosed under *Fryman* for lack of a "special relationship." Yet the Court of Appeals vacated the trial court's judgment upon the belief that the officers were subject to a statuto-

1. Ky., 896 S.W.2d 908 (1995).

ry duty to Pettit pursuant to KRS 421.500(4). The Court of Appeals further held that Franklin County was protected from suit by the doctrine of sovereign immunity, and that Thornsberry could not be held liable because of his resignation prior to disclosure of Pettit's identity. The Court of Appeals, however, did not extend the protection of sovereign immunity to Sheriff Collins and the Franklin County Sheriff's Department, holding that KRS 70.040 was a legislative waiver of immunity with regard to those entities.

As stated above, the Court of Appeals held that although there was no liability under the common law, Appellants had a statutory duty to inform Pettit of the disclosure of his identity pursuant to KRS 421.500(4). This statute provides that,

> Law enforcement officers and attorneys for the Commonwealth shall provide information to victims and witnesses on how they may be protected from intimidation, harassment, and retaliation as defined in KRS 524.040, 524.045 or 524.055.

Appellants make several arguments in support of their position that KRS 421.500(4) does not impose liability upon them. They contend (1) that the statute is invalid due to an alleged error in its codification, (2) that a 1996 amendment providing immunity for the duties imposed by KRS 421.500(4) should be applied retroactively, (3) that the statute is constitutionally deficient because of a lack of specificity, and (4) that it does not impose liability because it involves "discretionary" rather than "ministerial" duties. We shall only address the alleged error in statutory codification as it is dispositive of this issue.

On April 1, 1986, the General Assembly enacted the Crime Victims and Witness

Protection Act, of which KRS 421.500(4) is a part. The Act originated as House Bill 390 and appears in Chapter 212 of the Acts of the 1986 General Assembly. The Act contained ten sections. Section 9 forbade any suit for money damages arising from a violation of the Act, stating, "Nothing in this Act creates a cause of action for money damages against the state, a county, a municipality or any of their agencies, public officials or employees ." Upon official codification of Section 9 by the Legislative Research Commission ("LRC") as KRS 421.550, the provision stated erroneously, "Nothing in KRS 421.510 to 421.540, or KRS 15.245 creates a cause of action for money damages against the state, a county, a municipality, or any of their agencies, public officials, or employees." KRS 421.500(4) was not included in KRS 421.550 as one of the provisions that did not give rise to a cause of action despite its clear legislative enactment. In 1996, however, the General Assembly amended KRS 421.550 to include KRS 421.500.

Appellants correctly contend that the LRC made a mistake by excluding KRS 421.500(4) from the codification of KRS 421.550, and that this "miscodification" should not be the source of imposing liability upon them.[2] This issue was not brought before the trial court, nor was it brought before the Court of Appeals until the petition for rehearing phase. Thus, it is not preserved for review by this Court. Appellants contend, however, that the trial court's reliance on the miscodification constitutes a palpable error that should be reviewed by this Court.[3] We do not disagree.

It is difficult to conceive of a more fundamental mistake than reliance by a court on an erroneously codified statute. The General Assembly speaks through its acts and every provision thereof, and omission of a no-liability provision utterly defeats legislative intent. Here, the Legislature created an affirmative duty, but declared that breach of the duty should not give rise to civil liability. But for the no-liability provision, another statute, KRS 446.070, affirmatively creates liability by virtue of the breach of duty. In good conscience, we cannot, in the name of failure of preservation, particularly when the nature of the error was so elusive to both counsel and the courts below, return this case to a trial court, effectively directing it to apply the wrong law, thereby imposing liability that would not exist but for the clerical error committed by the LRC.

KRS 7.136 commands the Legislative Research Commission to maintain the official version of the Kentucky Revised Statutes and provides that the LRC "shall not alter the sense, meaning, or effect of any act of the General Assembly ...." Another statute, KRS 446.130, provides that the Kentucky Revised Statutes are intended to speak for themselves except "that in cases of conflict between two (2) or more sections, or of a latent or patent ambiguity in a section, reference may be had to the acts of the General Assembly ...." The parties have debated the meaning of KRS 446.130, with Administratrix Hudson contending

---

**2.** *See Jefferson County Teacher Association v. Board of Education,* Ky., 463 S.W.2d 627 (1970)(court held that public employees were prohibited from striking, reasoning that original employer-employee relations act excluded public employees from those granted the right to strike although this provision was not codified); *Fidelity & Columbia Trust Co. v. Meek,* 294 Ky. 122, 171 S.W.2d 41 (1943).

**3.** CR 61.02 states, "A palpable error which effects the substantial rights or a party may be considered by ... an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

that it prevents a court from referring to the acts unless there is a conflict or ambiguity. Appellants contend, however, that KRS 446.130 was intended, as part of a recodification of all statutes, to establish that in 1942, all were entitled to equal dignity without reference to when a particular statute had been enacted.

Appellants' view appears to have been confirmed in *Fidelity & Columbia Trust Co. v. Meek,*[4] a case which merits comprehensive review herein. In *Fidelity & Columbia Trust Co. v. Meek,* a long-standing provision of the law relating to appropriate fiduciary investments was omitted from the act in revising the statutes. There was clear evidence that the omission was unintentional and the result of a clerical error, so the editor of the revision reinserted the omitted phrase in the published edition. Relying on authorities which stated that "the intent of the lawmakers is the soul of the statutes and the search for this intent we have held to be the guiding star of the court,"[5] the Court determined that the mistakenly omitted concept should be restored to the law. It reasoned that the mistaken absence from the statute of a long-standing provision relating to classes of investments "develops an ambiguity," bringing the Court's conclusion within the purview of KRS 446.130. The Court concluded as follows:

> Therefore, the doubt in relation to the term "interest-bearing securities"; the historical setting of the new statute and unreasonable result of a strict and literal construction; and the duty of reconciling or harmonizing the inconsistency with

other cognate sections, we think justify the conclusion that it was not intended by the Legislature to place "dividend-paying stock" in a class of investments different from others enumerated in KRS 386.020, as originally enacted.[6]

Accordingly, we hold that Section (9) of Chapter 212 of the Acts of the 1986 General Assembly as codified in the Kentucky Revised Statutes as 421.550 mistakenly omitted KRS 421.500(4) from the "no-liability" provisions.[7] Thus, KRS 421.550 must be read to include KRS 421.500(4), and as such, no liability may be predicated on a violation of KRS 421.500(4).

The Court of Appeals determined that Sheriff Collins, the Sheriff's Department, and the City of Frankfort could not bear liability based on common law principles. It recognized that this Court and the Court of Appeals have spoken to the issue on several recent occasions and concluded that settled law precludes imposition of common law liability under the facts presented here. Appellee Hudson virtually concedes that existing law does not favor her position. Rather, she urges limitation of *Fryman v. Harrison*[8] and *Ashby v. City of Louisville*[9] to cases brought under 42 U.S.C.1983, and she urges an exception to the prevailing rule by virtue of the fact that her decedent was a juvenile during the time he acted as a police informant.

It is unnecessary to extensively review our decisions to resolve this issue. In *Fryman v. Harrison,* we held that there must be a special duty owed by the public official to a specific, identifiable person and not merely a breach of a general duty

4. 294 Ky. 122, 171 S.W.2d 41 (1943).

5. 171 S.W.2d at 48.

6. 171 S.W.2d at 48–49.

7. Effective July 15, 1996, KRS 421.550 was amended extensively. The amended version

includes KRS 421.500 as one of the provisions not giving rise to a cause of action for money damages.

8. Ky., 896 S.W.2d 908 (1995).

9. Ky.App., 841 S.W.2d 184 (1992).

owed to the public at large.[10] In *Commonwealth v. Vester*,[11] we followed *Fryman*, expressing the view that without a special relationship, there was no liability. *Fryman* and *Vester* both followed the view expressed in *Ashby v. City of Louisville*, that "a 'special relationship' exists only when the victim is in state custody or is otherwise restrained by the state at the time in question."[12] From these authorities, *Fryman* developed a two-prong test that required proof that the victim was in state custody or was otherwise restrained by the state and that the violence or other offensive conduct was perpetrated by a state actor.[13] While such a result is harsh, it is not without a basis in logic and public policy, and inasmuch as Appellee Hudson has shown no compelling reason to depart from the authorities relied upon, we decline to reconsider these prior decisions. The fact that Appellee's decedent was a juvenile at the time of his co-operation with the authorities does not require a different result. Whether a common law duty exists or not appears to be unrelated to the age of the victim. Likewise, we see no reason to modify the holding in *Fryman* to limit it to cases brought under 42 U.S.C.1983.[14]

The parties have presented various other claims and defenses in connection with this case, but by virtue of our resolution, it is necessary to address only those matters set forth herein. We have held that the statutory claim asserted by the administratrix of the decedent's estate must be based upon the statute as it was enacted by the General Assembly, which includes that portion declaring that no liability shall result from violation of the statute. We

have also held that under the facts presented here, prevailing common law principles in this jurisdiction do not afford a legal basis for a negligence claim against the law enforcement officials. Upon the foregoing, the opinion of the Court of Appeals is affirmed in part and reversed in part and the final judgment of the Franklin Circuit Court is reinstated.

COOPER, GRAVES, JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

---

10. Ky., 896 S.W.2d at 910.

11. Ky., 956 S.W.2d 204 (1997).

12. Ky., 841 S.W.2d at 190.

13. Ky., 896 S.W.2d at 910.

14. *Id.* (the "special relationship" requirement "relates not only to actions pursuant to 42 U.S.C.1983, but to an ordinary tort case such as this one").